# EXHIBIT E
# Part 1



**The Rawlings Company** LLC
Subrogation Division

Post Office Box 2000
LaGrange, Kentucky 40031-2000

One Eden Parkway
LaGrange, Kentucky 40031-8100

August 26, 2016

Ms. Leslie Spagnoli
BIG Y FOODS INC
PO BOX 7840
SPRINGFIELD, MA 01102

Re:  Our Client:         Aetna
     Member/Patient:     NELLINA GUERRERA/NELLINA GUERRERA
     Date of Loss:       02/20/2015
     Our Reference No.:  68528002

Dear Ms. Spagnoli:

    As you may know, the Center for Medicare and Medicaid Services ("CMS"), the agency charged with administering Medicare and Medicaid, released a 2011 Position Memorandum commenting upon the recovery rights of Medicare Advantage health plans. In regards to the above-referenced incident, NELLINA GUERRERA was provided medical benefits from such a plan. Enclosed is a Memorandum from our legal department discussing CMS's position and court cases that have addressed Medicare Advantage health plan recovery rights. It is important that you, your client and/or insured, and the other parties involved in this matter understand the position of CMS and The Rawlings Company LLC as early as possible. Please contact me if you have any questions, and I look forward to working with you to resolve this case.

Sincerely,

*KE James*

Kevin E. James J.D.
Subrogation Analyst
(502) 716-6980
FAX: (502) 565-1586

kej1@rawlingscompany.com

MEMORANDUM

FROM:     The Rawlings Company, LLC

DATE:     August 2016

RE:       Recovery Rights of Medicare Advantage Organizations

The purpose of this document is to communicate the position of The Rawlings Company, LLC, after consultation with legal counsel, regarding the subrogation and reimbursement rights of Medicare Advantage organizations ("MAOs") under the Medicare Secondary Payer Act ("MSP Act"). As outlined in more detail below, the majority of courts that have reviewed this issue have held that (1) state laws limiting subrogation and reimbursement rights of MAOs are preempted under the Medicare Act, and (2) MAO's recovery rights under the MSP Act are identical to the recovery rights of traditional Medicare, including specifically the ability to pursue subrogation and reimbursement rights through a private cause of action.

1.     Preemption:

**42 U.S.C. § 1395w-26(b)(3)**

Medicare Part C contains an express preemption provision: "[t]he standards established under [Part C] shall supersede any State law or regulation . . . with respect to MA plans which are offered by MA organizations under this part." See also 42 C.F.R. § 422.108(f).

***Meek-Horton v. Trover Solutions, Inc.*, 910 F. Supp. 2d 690 (S.D.N.Y. 2012)**

This matter involved a class action lawsuit against 40 Medicare Advantage plans alleging various violations of New York law by seeking and obtaining reimbursement out of the proceeds of settlements. Following *Potts v. The Rawlings Co., LLC*, the U.S. District Court for the Southern District of New York granted the defendants' motion to dismiss after determining that the basis of plaintiffs' claims—New York's anti-subrogation statute—was "expressly preempted by the 'plain wording' of federal law [42 U.S.C. § 1395w-26(b)(3), and 42 C.F.R. § 422.108(f)]", and dismissed the case. *Id.* at 696.

***Potts v. Rawlings Co., LLC*, 897 F. Supp. 2d 185 (S.D.N.Y. 2012)**

Three months prior to *Meek-Horton*, the U.S. District Court for the Southern District of New York held that New York's anti-subrogation statute (GOL § 5-335) was preempted by the Medicare Act: "to whatever extent the New York statute applies to Medicare or MA organizations, it is expressly preempted by the Medicare Act." *Id.* at 196. In reaching its conclusion, the court held that applicable statutory and regulatory preemption, exhaustion of remedies, and reimbursement provisions apply equally to traditional Medicare and MAOs. The court also distinguished the issue of whether a MAO has a private cause of action from the issue of preemption of state law: "given the broad express preemption clause in the Medicare Act, whether there is a private right of action

for MA organizations is immaterial to the question whether GOL § 5-335 is preempted." *Id.*

### *Trezza v. Trezza*, 104 A.D.3d 37 (N.Y. App. Div. 2d Dep't 2012)

The New York Supreme Court, Appellate Division, held that New York's anti-subrogation statute, as applied to MAOs, was preempted by federal law because it restricted reimbursement rights provided by the Medicare Act and applicable regulations. In reversing the trial court's order extinguishing a MAO's reimbursement claim, the appellate court held that the express preemption provisions in 42 USC 1395w-26(b)(3) and as explained in 42 CFR 422.108(f), prohibited a state from limiting MAOs' ability to obtain reimbursement under the MSP Act.

### 2.     Private Cause of Action:

### *In re Avandia Mktg.*, 685 F.3d 353 (3d Cir. 2012)

In *Avandia*, the U.S. Court of Appeals for the Third Circuit held that 42 U.S.C. § 1395y(b)(3)(A) provides MAOs with "a private cause of action for damages . . . placing no limitations upon which private (i.e., non-governmental) actors can bring suit for double damages when a primary payer plan fails to appropriately reimburse" the MAO. *Id.* at 359. The Third Circuit further held that even if 42 U.S.C. § 1395y(b)(3)(A) were deemed ambiguous in this regard, courts must to defer to CMS regulations—specifically 42 C.F.R. § 108—which states: "The MA organization will exercise the same rights to recover from a primary plan, entity, or individual that the Secretary exercises under the MSP regulations in subparts B through D or part 411 of this chapter." *Id.* at 365-66.

In addition to relying on statutory analysis and the CMS-issued regulations, the Third Circuit also used a December 5, 2011 memorandum issued by CMS—the federal agency that administers Medicare—to support its holding. The CMS memorandum reiterated that MAOs exercise the same recovery rights as traditional Medicare under the MSP Act, including preemption of state law under 42 C.F.R. § 422.108, and the ability to file a private cause of action in federal court.

*Avandia* is the first court of appeals decision to specifically analyze a MAO's recovery rights under the Medicare Secondary Payer Act, 42 U.S.C. § 1395y(b)(2). The Third Circuit distinguished prior cases—including *Care Choices HMO v. Engstrom*, and *Nott v. Aetna*—as those cases did not address the issue of whether a MAO could bring suit under the MSP private cause of action provision. *Id.* at 362.

In sum, pursuant to the *Avandia* decision, MAOs' recovery rights under the MSP Act are identical to the recovery rights of Medicare. Practically speaking, that means MAOs can pursue a claim directly against any source of benefits defined as primary under the statutes and regulations, even if it has already reimbursed the beneficiary. *See* 42 U.S.C. § 1395w-22(a)(4); 42 C.F.R. § 422.108(f). Additionally, by virtue of exercising the same rights to recover from a primary plan, entity, or individual that Medicare exercises under the MSP regulations, MAOs have a direct cause of action against any entity who made payment and any beneficiary or attorney who received payment and failed to reimburse the plan. *See* 42 C.F.R. § 411.24(g).

### *Mich. Spine & Brain Surgeons, PLLC v. State Farm Mut. Auto. Ins. Co.*, 758 F.3d 787 (6th Cir. 2014)

The U.S. Court of Appeals for the Sixth Circuit held that a provider could pursue a private cause of action under the Medicare Secondary Payer Act against an automobile no-fault carrier. Although this case involved a provider, the holding would justify a similar cause of action by a MAO, should a primary payer—whether it be a no-fault or liability carrier—refuse to reimburse the plan.

*Humana Medical Plan, Inc. v. W. Heritage Ins. Co.*, Case No. 15-11436, 2016 U.S. App. LEXIS 14509 (11th Cir. Aug. 8, 2016)

The U.S. Court of Appeals for the 11th Circuit followed the 3rd Circuit in *Avandia* and held that a Medicare Advantage Organization had private cause of action to sue a primary payer third party carrier under the Medicare Secondary Payer Act, 42 U.S.C. § 1395y(b)(3)(A). The court held the Medicare Advantage plan's rights under the MSP Act included a mandatory right to claim double damages. The Court gave *Chevron* deference to CMS regulation 42 C.F.R. § 411.24(i)(1) which requires a primary payer like the tortfeasor's carrier in the present case to "reimburse Medicare even though it has already reimbursed the beneficiary or other party" if such beneficiary or party fails to reimburse Medicare within 60 days of receiving a primary payment from a carrier.

*Collins v. Wellcare Healthcare Plans, Inc.*, 2014 U.S. Dist. LEXIS 174420 (E.D. La. Dec. 16, 2014)

In *Collins*, the plaintiff received medical benefits from a MAO after being involved in an automobile accident. She obtained a settlement from the tortfeasor, which she deposited into a trust account, and then filed a declaratory judgment action in state court against the MAO, arguing that the MAO was not entitled to subrogation or reimbursement. The MAO removed the case to the U.S. District Court for the Eastern District of Louisiana, and filed a counterclaim against the plaintiff seeking to recover the benefits it incurred out of the plaintiff's settlement with the tortfeasor.

The district court dismissed the plaintiff's declaratory judgment action for lack of subject matter jurisdiction, as it inherently demanded an interpretation of the Medicare Act, even though it was fashioned as a state law claim. Claims that arise under the Medicare Act must exhaust their administrative remedies prior to judicial review under 42 U.S.C. § 405(h). *Id.* at *17.

The district court then granted the MAO's counterclaim, in part. Citing to *Avandia* and the CMS regulations in support, it held that an MAO could pursue a private cause of action in federal court against the plaintiff to obtain reimbursement out of the proceeds of her settlement under 42 U.S.C. § 1395y(b)(3)(A) ("There is established a private cause of action for damages. . .in the case of a primary plan which fails to provide for primary payment . . . ."). *Id.* at *30. The court reasoned there was "no real distinction between a claim against a tortfeasor or his insurer to obtain reimbursement and a claim against a beneficiary to obtain reimbursement from a settlement funded by a tortfeasor or his insurer" for the purposes of a MAO's cause of action under 42 U.S.C. § 1395y(b)(3)(A). *Id.* at *31.

*Humana Ins. Co. v. Farmers Tex. County Mut. Ins. Co.*, 2014 U.S. Dist. LEXIS 166654 (W.D. Tex. Sept. 24, 2014)

In this matter, Humana – the MAO – made conditional payments to several enrollees who were injured as a result of an automobile accident. Each individual also had an automobile insurance policy with Farmers, who the MAO argued was the primary payer. Farmers refused the MAO's request for reimbursement, and the MAO filed suit in the U.S. District Court for the Western District of Texas. In response, Farmers filed a motion to dismiss, arguing that a MAO did not have a private cause of action under the MSP Act. The district court agreed with the Third Circuit's analysis in *Avandia*, and denied Farmer's motion to dismiss, finding that "any private plaintiff with standing may bring an action [under 42 U.S.C. 1395(b)(3)(A)]." *Id.* at *4.

*Humana Ins. Co. v. Paris Blank, LLP*, 2015 U.S. Dist. LEXIS 61814 (E.D. Va. May 10, 2016)

Addressing MAO recovery rights for the first time in the 4th Circuit, the U.S. District Court for the Eastern District

of Virginia held MAOs have a private cause of action under the MSP statute. The Court adopted the reasoning of the 3rd Circuit in *Avandia*. The MSP statute is "broad and unambiguous" and places "no limitations upon which private (i.e., non-governmental) actors can bring suit for double damages when a primary plan fails to appropriately reimburse any secondary payer." Like in *Avandia*, the Court held that even if the statute had been construed to be ambiguous, the CMS regulations reiterating these rights would be given *Chevron* deference. Again relying on *Avandia*'s reasoning, the Court went on to hold that the MSP private cause of action permitted MAOs to pursue members' attorneys and their law firms.