December 19, 2016

**HARRIS BEACH** PLLC
ATTORNEYS AT LAW

100 WALL STREET
NEW YORK, NY 10005
(212) 687-0100

**DAVID J. DINO**
**ASSOCIATE**

DIRECT:  (212) 313-5484
FAX:       (212) 687-0659
DDINO@HARRISBEACH.COM

<u>*VIA REGULAR MAIL*</u>

Sean Hammil
**Carter Mario**
3543 Main Street
Bridgeport, CT 06606

Leslie Spagnoli
**Big Y Foods, Inc.**
P.O. Box 7840
Springfield, MA 01102

      RE:    **<u>Nellina Guerrera Matter</u>**
                Our File No.:  287190

Dear Mr. Hammil and Ms. Spagnoli,

      This matter has been referred to us as outside counsel for The Rawlings Company ("Rawlings") on behalf Aetna, a Medicare Advantage Organization ("MAO") that issued a Medicare Advantage PPO (the "Plan") providing healthcare coverage to your client, Nellina Guerrera.  Ms. Guerrera suffered personal injuries that required extensive medical treatment as a result of a slip-and-fall incident that occurred on or about February 20, 2015 on the premises of Big Y Foods, Inc.  Pursuant to the Plan, the cost of Ms. Guerrera's medical treatment was covered and paid for by Aetna in the amount of $9,854.16.  This Plan is a Medicare Advantage health maintenance plan established pursuant to 42 U.S.C. §§ 1395 w-21 through 1395 w-28 and 42 U.S.C. §1395 mm.  Accordingly, the medical benefits paid on behalf of Ms. Guerrera constituted "conditional payments," meaning that such payments were made subject to Aetna's right of recovery from Ms. Guerrera in the event of a personal injury settlement or judgment she obtained in connection with the incident described above.

      Ms. Guerrera instituted a claim against Big Y Foods, which resulted in a recovery of $30,000 for Ms. Guerrera's injuries and medical costs.  The Plan enumerated Ms. Guerrera's rights and responsibilities in connection with her Medicare Advantage coverage.  Specifically, the enclosed Plan document requires Ms. Guerrera to reimburse the Plan for the full amount paid on behalf of Ms. Guerrera:

> "[I]f you receive payment from any person, entity or insurer responsible for causing your injury, illness or condition or you receive payment from any person, entity or insurer listed as a primary payer above, your MA plan has the right to recover from, and be reimbursed by you for all conditional payments the plan has made or will make as a result of that injury, illness or condition. . . .The lien may be enforced against any party who possesses funds or proceeds representing the

Sean Hammil
Leslie Spagnoli
December 19, 2016
Page 2

**HARRIS BEACH** PLLC
ATTORNEYS AT LAW

> amount of benefits paid by the Plan including, but not limited to, you, your representatives or agents, any person, entity or insurer responsible for causing your injury, illness or condition or any person, entity or insurer listed as a primary payer above."

*See* Plan document at 107. By accepting the benefits provided by the Plan, Ms. Guerrera "acknowledge[d] that the plan's recovery rights are a first priority claim and are paid to the plan before any other claims for your damages." *Id.* at 107. Both Ms. Guerrera and your firm, as her legal representatives, "shall fully cooperate with the plan's efforts to recover its benefits paid." *Id.* at 108.

The Plan's right to recover for the conditional payments it made on behalf of Ms. Guerrera, as detailed in her Medicare Plan, has been expressly recognized by federal courts throughout the country. Specifically, the Medicare Secondary Payer ("MSP") Act has been recognized to afford an MAO with a private right of action to recover for conditional payments it made for health care expenses and, where reimbursement is refused, **double damages**. The Third Circuit Court of Appeals has determined that the MSP Act provides MAOs with "a private cause of action for damages . . . placing no limitations upon which private (i.e., non-governmental) actors can bring suit for double damages when a primary plan fails to appropriately reimburse any secondary payer." *In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 685 F.3d 353, 359 (3d Cir. 2012) ("*Avandia*"). Since 2012, *Avandia* has been followed by numerous federal courts, which have concluded concluding that the MSP Act entitles a MAO to a private right of action for reimbursement. *See, e.g., Michigan Spine & Brain Surgeons, PLLC v. State Farm Mut. Auto. Ins. Co.*, 758 F.3d 787 (6th Cir. 2014); *Humana Med. Plan, Inc. v. Western Heritage Ins. Co.*, 2016 U.S. App. LEXIS 14509 (11th Cir. 2016); *Collins v. Wellcare Healthcare Plans, Inc.*, 73 F. Supp. 3d 653, 657 (E.D. La. 2014); *Humana Ins. Co. v. Farmers Tex. County Mut. Ins. Co.*, 95 F. Supp. 3d 983 (W.D. Tex. 2014); *Humana Ins. Co. v. Paris Blank LLP*, 2016 U.S. Dist. LEXIS 61814 (E.D. Va. May 10, 2016) ("*Paris Blank*").

An MAO's right to a private cause of action, and double damages where reimbursement has been refused, reaches broadly enough to allow recovery from a primary plan or any entity receiving payment from a primary plan. Law firms that have received payment from a primary plan through settlement or a court judgment are specifically included an entity from which an MAO can seek reimbursement. *Paris Blank*, 2016 U.S. Dist. LEXIS 61814. The court in *Paris Blank* determined that "CMS has promulgated regulations identifying attorneys as an entity from which recovery may be sought under the MSP law by the Secretary. Accordingly, [an MAO] may maintain suit against [the law firm representing a Medicare Advantage recipient] for recovery of conditional payments." *Id.* at *11 (internal citation omitted).

Beyond the clear language of your client's Plan and the weight of federal precedent affirming the Atena's right to recovery, the regulatory framework similarly confers this right. Most notably, 42 C.F.R § 422.108 provides that MAOs can "exercise the same rights to recover from a primary plan, entity, or individual that the Secretary exercises under the MSP regulations in subparts B through D of part 411 of this chapter." Furthermore, Centers for Medicare and

Sean Hammil
Leslie Spagnoli
December 19, 2016
Page 3



Medicaid Services ("CMS") has stated that it "understood § 422.108 to assign MAOs the right (and responsibility) to collect from primary payers using the same procedures available to traditional Medicare." *Centers for Medicare & Medicaid Services, Department of Health and Human Services Memorandum*: Medicare Secondary Payment Subrogation Rights (Dec. 5, 2011). Not surprisingly, federal courts have concluded that even if the MSP Act was ambiguous, which it is not, *Chevron* deference would entitle MAOs to a private right of action for reimbursement under the MSP Act.

Despite Aetna's first priority right to recover the conditional payment of benefits made on behalf of Ms. Guerrera under the Plan, federal precedent and regulation, Ms. Guerrera, the Carter Mario law firm, and Big Y Foods have refused to reimburse Aetna from the proceeds of the personal injury settlement. This plainly contravenes 42 U.S.C. § 1395y(b)(2)(B)(ii). While the Plan would prefer not to prosecute a case against one of its members, my client reserves the right to avail themselves of any relief they are entitled to as a matter of law, including a federal reimbursement action against Ms. Guerrera, the Carter Mario firm for failure to hold funds in constructive trust and for interfering with the Plan's right to recovery, and against Big Y Foods for failure to protect the Plan's lien by disbursement of the settlement proceeds to your firm in direct violation of the Plan's provisions and applicable laws.

I request that you contact me by no later than **January 2, 2017** with a proposal for the amicable resolution of this matter.

Please feel free to contact me with any questions.

    Respectfully,

    David J. Dino

Enclosures