**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| AETNA LIFE INSURANCE COMPANY, | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 3:17–cv–621 (JCH) |
| v. | : | |
| | : | |
| NELLINA GUERRERA, et al., | : | MARCH 13, 2018 |
| Defendants. | : | |

### RULING RE: MOTION TO DISMISS (DOC. NO. 36) AND CROSS-MOTION TO AMEND COMPLAINT (DOC. NO. 38)

This case comes before the court pursuant to a Complaint (Doc. No. 1) filed by the plaintiff, Aetna Life Insurance Company ("Aetna"), against the defendants, Nellina Guerrera ("Guerrera"); Carter Mario Injury Lawyers ("Carter Mario"); Attorney Sean Hammil ("Hammil"); Attorney Danielle Wisniowski ("Wisniowski"); and Big Y Foods, Inc. ("Big Y"). The case arises out of a dispute regarding payment for medical services received by Guerrera following an injury that Guerrera sustained at a Big Y retail location.

On July 5, 2017, the defendants filed a Motion to Dismiss (Doc. No. 26) pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6), arguing that the case does not belong in federal court, either because this court lacks subject matter jurisdiction or because Aetna has not stated a plausible claim with respect to their federal cause of action. On July 26, 2017, Aetna filed a Cross-Motion to Amend its Complaint (Doc. No. 38). In a Memorandum filed in support of the Cross-Motion and in opposition to the Motion to Dismiss, Aetna clarified that it is opposing the Motion to Dismiss, but is cross moving to amend its Complaint "should this Court determine that Aetna's Complaint, as it is currently drafted, fails to create subject matter jurisdiction over Aetna's claims, or

fails to state viable claims against Defendants." Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss and In Support of Cross-Motion for Leave to Amend its Complaint ("Pl.'s Response") (Doc. No. 39) at 17.

For the reasons that follow, the defendants' Motion to Dismiss (Doc. No. 36) is granted in part and denied in part, and Aetna's Motion to Amend (Doc. No. 38) is denied.

## I.    STANDARD OF REVIEW

When deciding a motion to dismiss pursuant to Rule 12(b)(1), the plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence. See Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005). However, the allegations of the complaint should be construed in the plaintiff's favor. A plaintiff need not show a likelihood of success on the federal claim, but need only adequately raise a federal question for the court to adjudicate. See id. (district court erred in dismissing civil rights claim where the plaintiff had "sufficiently raised the question of whether Title VII of the Civil Rights Act of 1964 is applicable in this instance" which was "a federal question over which the district court has subject matter jurisdiction"). Federal question jurisdiction exists if the complaint sets forth a cause of action under federal law that is neither clearly "immaterial and made solely for the purpose of obtaining jurisdiction," nor "wholly insubstantial and frivolous." Lyndonville Sav. Bank & Tr. Co. v. Lussier, 211 F.3d 697, 701 (2d Cir. 2000) (quoting Bell v. Hood, 327 U.S. 678, 682–83 (1946)).

With respect to a motion to dismiss pursuant to Rule 12(b)(6), the court must determine whether the plaintiff has stated a legally cognizable claim by making allegations that, if true, would show that the plaintiff is entitled to relief. See Bell Atl.

Corp. v. Twombly, 550 U.S. 544, 557 (2007) (interpreting Rule 12(b)(6), in accordance with Rule 8(a)(2), to require allegations with "enough heft to 'sho[w] that the pleader is entitled to relief'" (alteration in original)). The court takes all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. Crawford v. Cuomo, 796 F.3d 252, 256 (2d Cir. 2015). However, the tenet that a court must accept a complaint's allegations as true is inapplicable to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555).

To survive a motion pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556).

## II.  ALLEGED FACTS[1]

Defendant Guerrera is a resident of Monroe, Connecticut. Complaint ("Compl.") at ¶ 5. Defendant Big Y is a Massachusetts corporation with a location in Monroe, Connecticut. Id. at ¶ 9. On or about February 20, 2015, Guerrera allegedly sustained personal injuries at the Big Y location in Monroe, for which she subsequently sought and received medical care. Id. at ¶ 12. Aetna is a Medicare Advantage Organization

---

[1] In deciding a Rule 12(b)(1) or (6) motion to dismiss, the court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. Crawford v. Cuomo, 796 F.3d 252, 256 (2d Cir. 2015).

("MAO") and operates a Medicare Advantage health insurance plan ("MAO Plan"). <u>Id.</u> at ¶¶ 4, 10. At all relevant times, Guerrera was Medicare-eligible and was enrolled in and maintained health insurance coverage through Aetna's MAO Plan. <u>Id.</u> at ¶ 10. Following the February 20, 2015 accident, Aetna paid approximately $9,854.16 in medical expenses on behalf of Guerrera. <u>Id.</u> at ¶¶ 15–16. Guerrera retained the services of the law firm Carter Mario and Attorneys Hammil and/or Wisniowski to represent her in a claim against Big Y for the injuries she sustained on February 20, 2015. <u>Id.</u> at ¶ 22. Guerrera settled her claim against Big Y for $30,000.

Aetna made multiple attempts to place the defendants on notice that it had a lien on the medical expenses resulting from Guerrera's injuries at Big Y, and to recover those expenses from one or more of the defendants, beginning on September 22, 2015, a year before the settlement agreement was made. <u>Id.</u> at ¶¶ 26–35. On March 10, 2016, Big Y agreed that it would not send the full amount of any settlement to Guerrera, Carter Mario, Hammil, and/or Wisniowski without first dealing with Aetna's lien. <u>Id.</u> at ¶ 31. Nevertheless, Big Y subsequently sent the full $30,000 settlement payment to Guerrera, Carter Mario, Hammil, and/or Wisniowski on or about September 15, 2016. <u>Id.</u> at ¶ 32.

## III. RELEVANT HISTORY OF THE MEDICARE SECONDARY PAYER ACT

In light of the complex nature of the statutory framework at issue in this case, it is worthwhile to sketch a brief history of the Medicare Secondary Payer Act ("MSP"), title 42, section 1395y(b) of the United States Code.

Congress enacted the Medicare Act in 1965 as a "federally funded health insurance program for the elderly and disabled." <u>Thomas Jefferson Univ. v. Shalala</u>, 512 U.S. 504, 506 (1994). The Medicare Act consists of five parts, the first two of which

"create, describe, and regulate traditional fee-for-service, government-administered Medicare." In re Avandia Mktg., 685 F.3d 353, 357 (3d Cir. 2012). The third part, Part C, outlines the Medicare Advantage Program, described further below. The fourth and fifth parts are not at issue here.

In 1980, Congress amended the Medicare Act to add the Medicare Secondary Payer Act ("MSP"), in an effort to reduce the escalating costs of Medicare to the federal government. Omnibus Reconciliation Act of 1980, Pub. L. No. 90-499, 94 Stat. 2599. "As its title suggests, the statute designates Medicare as a 'secondary payer' of medical benefits, and thus precludes the program from providing such benefits when a 'primary plan' could be expected to pay.'" Taransky v. Sec'y of HHS, 760 F.3d 307, 310 (3d Cir. 2014). The MSP is codified at section 1395y of title 42 of the United States Code. The MSP provides that Medicare cannot pay medical expenses when "payment has been made or can reasonably be expected to be made under a workman's compensation law or plan of the United States or State or under an automobile or liability insurance policy or plan (including a self-insured plan) or no fault insurance." 42 U.S.C. § 1395y(b)(2)(A)(ii).

In subsection 1395y(b)(2)(B) of the MSP, Congress gave "[t]he Secretary" authority to make conditional payments "if a primary plan . . . has not made or cannot reasonably be expected to make payment with respect to such item or service promptly," but such payment "shall be conditioned on reimbursement." Id. at (b)(1)(B)(i). Congress further provided an enforcement mechanism for the "United States" in cases where conditional payment has been made. Subsection 1395y(b)(2)(B)(ii) provides that "a primary plan, and an entity that receives payment

from a primary plan, shall reimburse the appropriate Trust Fund for any payment made by the Secretary under this subchapter with respect to an item or service if it is demonstrated that such primary plan has or had a responsibility to make payment with respect to such item or service." 42 U.S.C. § 1395y(b)(2)(B)(ii). Subsection (2)(B)(ii) also contains a responsibility-triggering provision, which explains that responsibility for repayment "may be demonstrated by a judgment, a payment conditioned upon the recipient's compromise, waiver, or release (whether or not there is a determination or admission of liability) of payment for items or services included in a claim against the primary plan or the primary plan's insured, or by other means." Id. Finally, subsection (2)(B)(iii) creates a cause of action for "the United States," which provides, in relevant part:

> In order to recover payment made under this subchapter for an item or service, the United States may bring an action against any or all entities that are or were required or responsible (directly, as an insurer or self-insurer, as a third-party administrator, as an employer that sponsors or contributes to a group health plan, or large group health plan, or otherwise) to make payment with respect to the same item or service (or any portion thereof) under a primary plan. The United States may, in accordance with paragraph (3)(A) collect double damages against any such entity. In addition, the United States may recover under this clause from any entity that has received payment from a primary plan or from the proceeds of a primary plan's payment to any entity.

42 U.S.C. § 1395y(b)(2)(B)(iii).

Congress also created a private right of action, codified at section 1395y(b)(3)(A) of title 42 of the United States Code, and described herein as the "Private Cause of Action" provision. In comparison to the cause of action created for the United States, the Private Cause of Action provision is relatively sparse. It provides as follows:

> There is established a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs [(b)](1) and [(b)](2)(A).

42 U.S.C. § 1395y(b)(3)(A).  That is the entirety of the Private Cause of Action provision; it does not make explicit who may bring suit or against whom, or even under what conditions precisely suit may be brought.  Paragraph (b)(1) governs situations in which group health plans must provide payment, while paragraph (b)(2)(A) governs situations including liability insurance settlements.  42 U.S.C. §§ 1395y(b)(1), (b)(2)(A).

In 1997, Congress once again amended the Medicare Act to add Part C, which "afford[s] beneficiaries the option to receive their Medicare benefits through private organizations" known as Medicare Advantage Organizations ("MAOs").  Collins v. Wellcare Healthcare Plans, Inc., 73 F. Supp. 3d 653, 659 (E.D. La. 2014).  "Pursuant to these amendment, most Medicare beneficiaries can now elect to receive their benefits through Original Medicare or through an MAO."  Id. at 659–60.  Part C provides that the Center for Medicare and Medicaid Services ("CMS") pays MAOs a fixed amount per enrollee, and the MAOs assume the risk of insuring each enrollee.  See 42 U.S.C. §§ 1395w-21, 1395w-23.

Part C does not contain an enforcement provision equivalent to either the government enforcement provision, subsection (b)(2)(B)(iii), or the Private Cause of Action provision, paragraph (b)(3)(A).  Absent an enforcement mechanism in Part C, disputes have arisen as to whether Part C created an implied right of action, see, e.g. Parra v. PacifiCare of Arizona, Inc., 715 F.3d 1146, 1154 (9th Cir. 2013); Konig v. Yeshiva Imrei Chaim Viznitz of Boro Park, Inc., No. 12-CV-467, 2012 WL 1078633 (E.D.N.Y. Mar. 30, 2012), or—at issue in this case—whether the Private Cause of

Action is available to MAOs, see, e.g., Avandia, 685 F.3d at 359–65; Collins, 73 F. Supp. 3d at 666.

## IV. SUBJECT MATTER JURISDICTION

In its Complaint, Aetna alleges claims pursuant to the Medicare Act, title 42, section 1395y of the United States Code, as well as common law claims arising out of Aetna's insurance contract with Guerrera. See generally Compl. The defendants move to dismiss the Medicare Act claims for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), or, in the alternative, for failure to state a claim pursuant to Rule 12(b)(6). See generally Defendants' Memorandum of Law in Support of their Motion to Dismiss ("Def.'s Mem.") (Doc. No. 36-1). The defendants also urge the court to decline to exercise supplemental jurisdiction over Aetna's state law claims. See id. at 11.

The defendants vigorously assert that this court lacks subject matter jurisdiction over Aetna's claims because Aetna's Medicare Act claims are improper for a variety of reasons, and because this case arises, "if at all, under state contract law." Def.'s Mem. at 10. Aetna asserts that its Medicare Act claims raise federal questions, which are properly decided by this court, and accuses the defendants of "conceptually and organizationally conflat[ing] the jurisdictional issue (i.e., whether the Court can hear Aetna's claims) with the pleading issue (i.e., whether Aetna's Complaint asserts a viable claim)." Pl.'s Response at 8–11.

The court agrees with Aetna that it has adequately alleged federal claims to give this court federal question jurisdiction pursuant to section 1331 of title 28 of the United States Code. Indeed, in the case relied on most heavily by the defendants, Parra, the Ninth Circuit rejected a virtually identical subject matter jurisdiction challenge. Parra, 715 F.3d at 1151–52. The Parra court concluded that, "'[b]ecause interpretation of the

federal Medicare Act presents a federal question,' the district court had subject matter jurisdiction to determine whether that act created a cause of action in favor of Pacificare against the [defendants]." Id. (quoting Avandia, 685 F.3d at 357) (internal citation omitted); see also Plante v. Dake, 621 Fed. App'x 67, 68 (2d Cir. 2015) (summary order) (rejecting subject matter jurisdiction challenge because "Plante asserts claims under the [Medicare Act], which is a federal statute"); id. at 68 n.4 ("Federal question jurisdiction exists . . . over a claim stating a cause of action under federal law unless the allegation was clearly immaterial, or the claim was made solely for the purpose of obtaining jurisdiction." (quoting Parra, 715 F.3d at 1152)).

In short, Aetna has adequate pled a federal question such that this court may exercise subject matter jurisdiction over Aetna's Complaint. The defendants' arguments to the contrary are more appropriately addressed as challenges to the pleadings than jurisdictional challenges.[2]

## V.     PRIVATE CAUSE OF ACTION PROVISION

As stated above, Aetna brings claims pursuant to the Medicare Act and state law. See generally Compl. The defendants have not raised substantive challenges to Aetna's state law claims, but rather urge the court to dismiss Aetna's federal claims and decline to exercise supplemental jurisdiction over Aetna's state law claims. The questions before the court, therefore, revolve around the Medicare Act, specifically the Private Cause of Action provision.

---

[2] Indeed, in their Reply to Aetna's Opposition to the Motion to Dismiss, the defendants do not substantively dispute Aetna's argument that the defendants' claims are more properly raised pursuant to Rule 12(b)(6) than Rule 12(b)(1). Instead, the defendants acknowledge that their Motion to Dismiss "involves a merits-based inquiry" and that "regardless of whether dismissal is accomplished under Rule 12(b)(1) or 12(b)(6)," the court should decline to exercise supplemental jurisdiction. Def.'s Reply at 9.

The parties dispute who may bring an action pursuant to this provision, against whom they may bring it, and under what circumstances it may be brought. The court will address each of these arguments in turn.

A.    Who May Sue

The first question the court must answer is whether Aetna, an MAO, may bring suit pursuant to the Private Cause of Action provision. Aetna asserts that the Private Cause of Action provision "provide[s] a private cause of action to private entities, specifically MAOs." Pl.'s Response at 12; see also Pl.'s Reply (Doc. No. 44) at 5–6 ("MAOs do have a private right of action under the MSP Private Cause of Action Provision to seek reimbursement, as a secondary payer, for conditional payments made on behalf of its members.").

The defendants, on the other hand, have not meaningfully challenged Aetna's right to bring suit as a MAO. In their Memorandum, defendants merely observe that "[t]he MSP Act does not specify whom or what is granted this private right of action against primary plans" and then "assum[es], for the sake of argument, that the MSP Act permits an MAO to bring a private right of action."[3]  Def.'s Mem. at 4.  In their Reply to the plaintiff's Response, the defendants assert that, as an MAO, Aetna "has no authority to bring [the] claims," but the substance of their argument appears to construe Aetna's claim as alleged under the government's cause of action, subsection (2)(B)(iii). See Defendants' Reply to Plaintiff's Response ("Def.'s Reply") (Doc. No. 43) at 2 ("Section (b)(2)(B) of the MSP Act grants a right to make conditional payments only to 'the

---

[3] Similarly, in the defendants' Reply to Aetna's Response, the defendant's "put[ ] aside that Section 1395y(b)(3)(A) makes no specific reference to MAOs."  Def.'s Reply at 3.

Secretary,' id. § 1395y(b)(2)(B)(i), and grants only to 'the United States' a right to bring an action to recover from an entity that fails to reimburse the Secretary for conditional payments, id. § 1395y(b)(2)(B)(iii).").  As Aetna accurately observes, this argument—and the cases that the defendants cite in support of their position—go to the government's cause of action, set forth in subsection (2)(B)(iii).  Pl.'s Reply at 7; see Primax Recoveries Inc. v. Yarmosh, No. 3:03-CV-1931 (AWT), 2006 WL 8424020 (D. Conn. Sept. 7, 2006) (holding that MAOs may not bring suit pursuant to subsection (2)(B)(ii)).  That argument is inapposite in this case, as Aetna's MSP claim was brought pursuant to the Private Cause of Action provision.[4]  See Compl. at ¶ 1 (citing 42 U.S.C. § 1395y(b)(3)(A)).

In sum, although the defendants have repeatedly expressed doubt that an MAO may bring suit pursuant to the Private Cause of Action, they have cited no authority on this question aside from pointing out that the Private Cause of Action provision does not mention MAOs.  See Def.'s Mem. at 4; Def.'s Reply at 3.  However, the Private Cause of Action provision does not list any entity who may sue.  See 42 U.S.C. § 1395y(b)(3)(A).  Clearly, Congress did not create a cause of action for no one.  The court concludes that the absence of a specific reference to MAOs is not probative of Congress's intent.  See 42 U.S.C. § 1395y(b)(3)(A).

---

[4] The court acknowledges that Aetna's Complaint and subsequent argument muddies the "waters" with respect to which provision it is suing under by citing both the Private Cause of Action provision, paragraph (3)(A), and the conditional payment provision, paragraph (2)(B).  See, e.g., Compl. at ¶ 45 (stating that Aetna made payments "conditionally pursuant to 42 U.S.C. § 1395[y](b)(2)(B)(i)"); Exh. F, Compl. (stating that defendants' refusal to reimburse Aetna "plainly contravenes 42 U.S.C. § 1395y(b)(2)(B)(ii)")).  However, the court interprets Aetna's Medicare Act claims as alleged pursuant to the Private Cause of Action provision, paragraph (3)(A).  To the extent that Aetna is attempting to sue the defendants pursuant to the government's cause of action, subsection (2)(B)(iii), those claims are dismissed.

The Second Circuit has never directly addressed whether MAOs may bring suit pursuant to the Private Cause of Action provision. The only two circuits who have addressed this question, the Third and Eleventh Circuits, have both reached the conclusion that MAOs may sue under the Private Cause of Action provision.[5] See Humana Med. Plan, Inc. v. W. Heritage Ins. Co., 832 F.3d 1229, 1238 (11th Cir. 2016) ("We see no basis to exclude MAOs from a broadly worded provision that enables a plaintiff to vindicate harm caused by a primary plan's failure to meet its MSP primary payment or reimbursement obligations."); Avandia, 685 F.3d at 359 ("[W]e find that the [Private Cause of Action provision] is broad and unambiguous, placing no limitations upon which private (i.e., non-governmental) actors can bring suit for double damages when a primary payer fails to appropriately reimburse a secondary payer."). Since Avandia was published, a significant number of district courts have followed the reasoning of the Third Circuit to find that MAOs may avail themselves of the Private Cause of Action provision. See, e.g., MAO-MSO Recovery II, LLC v. State Farm Mutual Automobile Ins. Co., No. 1:17-CV-1537-JBM-JEH, 2018 WL 340020, at *1 (C.D. Ill. Jan. 9, 2018) (collecting cases). This court, too, finds the reasoning of the Third and Eleventh Circuits persuasive, and concludes that Aetna, as a MAO, may sue under the Private Cause of Action provision.

Aetna also argues that, even if the Private Cause of Action provision were ambiguous, the court should defer to CMS regulations interpreting the statute, which

---

[5] The Ninth Circuit expressly reserved judgment on this issue in Parra. 715 F.3d at 1154 (declining to address whether the Private Cause of Action provision "provided a MAO a private right of action against third-party tortfeasors for medical expenses advanced on behalf of plan participants" because the plaintiff did not bring claims against the primary plan).

militate in favor of permitting MAOs to sue under the Private Cause of Action.  See Pl.'s

Response at 14–15.  Aetna specifically cites the court to section 422.108(f) of title 42 of

the Code of Federal Regulations ("section 422.108(f)"), which provides that a "[MAO]

will exercise the same rights to recover from a primary plan, entity, or individual that the

Secretary exercises under the MSP regulations . . . ."  42 C.F.R. § 422.108(f).[6]  Aetna

urges the court to accord the regulation deference in keeping with the Chevron doctrine,

first articulated in Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,

467 U.S. 837 (1984).  The Chevron doctrine instructs that, "[w]hen Congress has

'explicitly left a gap for an agency to fill, there is an express delegation of authority to the

agency to elucidate a specific provision of the statute by regulation,' and any ensuing

regulation is binding in the courts unless procedurally defective, arbitrary or capricious

in substance, or manifestly contrary to the statute."  U.S. v. Mead Corp., 533 U.S. 218,

227 (2001) (quoting Chevron, 467 U.S. at 843–44).

　　　The defendants argue that "[f]ederal regulations can inform the scope of a right

already created by Congress, but cannot themselves create a right of action that does

not exist by statute."  Def.'s Mem. at 8; see also Def.'s Reply at 4–5.  The court agrees

with this statement.  See Alexander v. Sandoval, 532 U.S. 275, 291 (2001) ("Language

in a regulation may invoke a private right of action that Congress through statutory text

---

[6] In addition, Aetna notes that, in a 2011 memorandum, "CMS clarified that it understood MAOs, like Aetna, to have the same rights and responsibilities to collect from primary payers as traditional Medicare."  Pl.'s Response at 14.  However, memoranda are "not subject to sufficiently formal procedures to merit Chevron deference."  Coeur Alaska, Inc. v. Southeast Alaska Conservation Council, 557 U.S. 261, 283–84 (2009) (citing U.S. v. Mead Corp., 533 U.S. 218, 234–38 (2001)).  The court could still find the reasoning in the 2011 memorandum persuasive and accord it deference pursuant to Auer v. Robbins, 519 U.S. 452 (1997), but because the court concludes that Chevron deference is appropriate as to section 422.108(f), the court does not reach the question of what deference, if any, to give the 2011 memorandum.

created, but it may not create a right that Congress has not."). However, in this case, the CMS regulation does not create a new cause of action, but rather clarifies ambiguity in the Private Cause of Action provision. Cf. Digital Realty Trust, Inc. v. Somers, --- S. Ct. ----, 2018 WL 987345, at *13 (Feb. 21, 2018) (holding that agency regulation was not entitled to Chevron deference as to the meaning of a statutory provision that was "unambiguous"). Although the court has already concluded that the Private Cause of Action provision unambiguously permits suit by MAOs, the court further concludes that, even if it were ambiguous, the CMS regulation would be entitled to Chevron deference and would lead the court to the same conclusion. See Avandia, 685 F.3d at 366 (concluding that "the plain language" of section 422.108(f) "suggests that the Medicare Act treats MAOs the same way it treats the Medicare Trust Fund for purposes of recovery from any primary payer" and that the court is "bound to defer to the duly-promulgated regulation of CMS"); see also Humana Ins. Co. v. Paris Blank LLP, 187 F. Supp. 3d 676, 680 (E.D. Va. 2016) (concluding that section 422.108(f) is a "permissible interpretation of the MSP statute" that is entitled to Chevron deference and gives MAOs a right to recover under the Private Cause of Action provision).

The defendants cite the court to Konig, 2012 WL 1078633, an unpublished case from the Eastern District of New York, for the proposition that section 422.108(f), as a regulation, cannot create a right of action. Def.'s Reply at 5. In Konig, however, the debate surrounded the government's enforcement mechanism, subsection (2)(B)(iii). In that context, the Konig court rejected the argument that section 422.108(f) "places [MAOs] in the same shoes as the government, thereby granting them the power to bring a private right of action." Konig, 2012 WL 1078633, at *2 n.2. The court views this case

as distinguishable from <u>Konig</u>, however, as the Private Cause of Action provision, unlike the government's cause of action, is (at a minimum) ambiguous with respect to whether MAOs may bring suit.

However, the court also acknowledges that <u>Konig</u>, while clearly focused on the government's cause of action as opposed to the Private Cause of Action provision, contains broader language suggesting that the Private Cause of Action provision is not a cause of action for MAOs. <u>See</u> <u>id.</u> ("<u>Nothing</u> in the Medicare statute itself creates a cause of action, and the parties cannot fashion one by invoking the regulations." (emphasis added)). To the extent that this language makes <u>Konig</u> inconsistent with this Ruling, the court finds <u>Konig</u> unpersuasive and declines to follow it. For the reasons articulated above, the court concludes that the Private Cause of Action provision unambiguously permits suit by MAOs and, further, that even if it was ambiguous the CMS regulation that addresses MAO enforcement mechanisms, section 422.108(f), grants MAOs the right to sue under the Private Cause of Action provision.

In reaching this conclusion, the court is mindful of the precise language of section 422.108(f), which specifically equates the enforcement authority of MAOs with that of "the Secretary." <u>See</u> 42 C.F.R. § 422.108(f). At first blush, this language implies that section 422.108(f) interprets the government's cause of action, subsection (2)(B)(iii), not the Private Cause of Action provision, paragraph (3)(A). With respect to subsection (2)(B)(iii), section 422.108(f) is entitled to no <u>Chevron</u> deference on the issue of who may bring suit, as subsection (2)(B)(iii) unambiguously creates a right of action for the government alone. <u>See</u> 42 U.S.C. § 1395y(b)(2)(B)(iii) (creating a cause of action for "the United States"). However, because subsection (2)(B)(iii) itself provides that the

15

Secretary may collect double damages "in accordance with paragraph (3)(A)," the cause of action provided to the government is, itself, consistent with the Private Cause of Action. See id. Therefore, as the Avandia court concluded, "the regulation refers, ultimately, to the private cause of action in § 1395y(b)(3)(A) and deference to it supports [the MAO's] right to bring suit under that provision." Avandia, 685 F.3d at 367.

For the reasons articulated above, the court concludes that Aetna may bring suit under the Private Cause of Action provision in this Action. The next question is whom Aetna may sue.

B.     Who May Be Sued

In its Complaint, Aetna brings claims pursuant to the MSP Private Cause of Action provision against three categories of defendant: (1) a Medicare beneficiary, Guerrera; (2) the law firm, Carter Mario, and the lawyers, Hammil and Wisniowski, who represented Guerrera in her personal injury settlement with Big Y; and (3) a tortfeasor, Big Y. See generally Compl. In their Motion to Dismiss, the defendants argue that the Private Cause of Action provision permits suits only against a "primary plan," and that Aetna has failed to allege that any of the defendants—Big Y, Guerrera, or her attorneys—constitute a "primary plan." Def.'s Mem. at 6–7. In response, Aetna argues that other federal courts have upheld the right of MAOs to sue all three types of defendants at issue here pursuant to the Private Cause of Action provision, and urges this court to follow suit. Pl.'s Response at 22. Aetna further argues that, although its Complaint does not use the term "primary plan," that deficiency "elevates form over substance" because "[t]he Complaint clearly identifies the MSP Act and its Private Cause of Action Provision as the federal statutes pursuant to which Aetna has filed suit, and Defendants are obviously on notice of same." Id. at 6.

16

1.  Suit may only be brought against a primary plan[7]

In order to determine against whom suit may be brought, the court turns first to the language of the Private Cause of Action provision. Unfortunately, as with the question of who may sue, the express language of the Private Cause of Action provision does not specify who may be sued. Instead, the Private Cause of Action provision states that suit may be brought "in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A)." 42 U.S.C. § 1395y(b)(3)(A). Thus, the language of the provision itself does not clarify against whom suit is proper.

When interpreting the MSP Private Cause of Action, the Second Circuit has clearly concluded that suit may be brought against the primary plan itself. See Manning v. Utils. Mut. Ins. Co., Inc., 254 F.3d 387, 391–92 (2d Cir. 2001) ("Congress has authorized a private cause of action and double damages against entities designated as primary payers that fail to pay for medical costs for which they were responsible, which are borne in fact by Medicare." (emphasis added)); Woods v. Empire Health Choice, Inc., 574 F.3d 92, 95–96 (2d Cir. 2009 ) (describing the Private Cause of Action provision as one which allows private parties to "recover amounts owed by a primary plan"); Mason v. Amer. Tobacco Co., 346 F.3d 36, 42–43 (2d Cir. 2003) ("[P]ursuant to [the Private Cause of Action provision] individuals may be awarded double damages against a primary plan that has wrongfully denied them payment . . . ."); see also Parra,

---

[7] The court notes that the MSP, the CMS regulations interpreting the MSP, relevant case law, and the parties themselves variously use the term "primary payer" and "primary plan." The court is aware of no substantive difference between these two terms, but uses the term "primary plan" throughout this Ruling because that is the term used in the Private Cause of Action provision at issue.

715 F.3d at 1154 (affirming dismissal of claim in part because it was not brought against the primary plan).  In short, the Second Circuit has concluded that, at a minimum, primary payers may be sued pursuant to the Private Cause of Action provision.

Aetna urges the court to find that beneficiaries and their attorneys may also be sued pursuant to the Private Cause of Action.  Pl.'s Response at 20–21.  The court concludes, however, that the MSP and interpreting regulations do not give MAOs the right to sue beneficiaries or their attorneys.  The court reaches this conclusion for several reasons.

First, the plain language of the Private Cause of Action provision, while admittedly vague, suggests that Congress intended suit against only primary plans. The provision is triggered when "a primary plan . . . fails to provide for primary payment (or appropriate reimbursement)."  42 U.S.C. § 1395y(b)(3)(A).  Had Congress intended to create a cause of action for double damages against beneficiaries who received payment from a primary plan, Congress could simply have created a cause of action when "any entity or person" failed to reimburse an MAO.

In support of its interpretation, Aetna cites the court to a CMS regulation section 411.24(g) of title 42 of the Code of Federal Regulations ("section 411.24(g)"), which states that "CMS has a right of action to recover its payments from any entity, including a beneficiary, . . . that has received a primary payment."  42 C.F.R. § 411.24(g).  Aetna further cites the court to the government's cause of action in the MSP, subsection (2)(B)(iii), which states that "the United States may recover under this clause from any entity that has received payment from a primary plan or from the proceeds of a primary plan's payment to any entity."  42 U.S.C. § 1395y(b)(2)(B)(iii).  Far from conflicting with

18

the court's interpretation, however, this authority supports a reading of the Private Cause of Action provision that permits suit only against primary plans. This is because the government's cause of action permits only recovery from beneficiaries, while providing that the government may "collect double damages against" entities including "any or all entities that are or were required or responsible (directly, as an insurer or self-insurer, as a third-party administrator, as an employer that sponsors or contributes to a group health plan, or large group health plan, or otherwise) to make payment with respect to the same item or service (or any portion thereof) under a primary plan." 42 U.S.C. § 1395y(b)(2)(B)(iii). In other words, the government's cause of action provides only for recovery of payment against beneficiaries or their attorneys, while allowing the government to sue primary plans for double damages. See Mason, 346 F.3d at 38 ("The [MSP] provides for the government to receive double damages in successful actions against primary payers."). Notably, the government's cause of action, subsection (2)(B)(iii), references the Private Cause of Action provision, paragraph (3)(A), in the course of allowing for double damages "against any such entity," where "such entity" describes primary plans. 42 U.S.C. § 1395y(b)(2)(B)(iii). This cross-reference suggests that the Private Cause of Action, like the government's cause of action, allows for double damages only against primary plans.

Aetna also directs the court to a Ruling by a court in the Eastern District of Louisiana, which held that beneficiaries who had received a settlement from a tortfeasor were, in effect, converted into primary plans. Collins, 73 F. Supp. 3d at 667–68. The Collins court concluded that the settlement itself—as opposed to the entity that funded the settlement—was the "primary plan" because "there is no real distinction between a

claim against a tortfeasor or his insurer to obtain reimbursement and a claim against a beneficiary to obtain reimbursement from a settlement funded by a tortfeasor or his insurer." Id. at 667.

The court declines to follow the lead of the Collins court, however, as its interpretation of the Private Cause of Action provision cannot be reconciled with the text of the MSP. Unlike much of the language at issue in the MSP, "primary plan" has a clear definition that does not include beneficiaries who have received benefits or settlement funds. The MSP defines "primary plan" as "a group health plan or large group health plan . . . and a workmen's compensation law or plan, an automobile or liability insurance policy or plan (including a self-insured plan) or no fault insurance . . . ." 42 U.S.C. § 1395y(b)(1)(A)(ii). In addition, elsewhere the MSP repeatedly distinguishes between primary plans and other entities. See, e.g., id. at (b)(2)(B)(vii)(I) (governing notice of settlement by "the claimant or applicable plan"); id. at (b)(8)(D) (defining "claimant" as "an individual filing a claim directly against the applicable plan" or "an individual filing a claim against an individual or entity insured or covered by the applicable plan"); id. at (b)(8)(F) (defining "applicable plan" as "[l]iability insurance (including self-insurance)," "[n]o fault insurance," or "[w]orkers' compensation laws or plans").

In the alternative, the Collins court concluded that, even if the Private Cause of Action provision did not unambiguously allow for suit against beneficiaries, proper deference to CMS regulations would direct the same result. Collins, 73 F. Supp. 3d at 667–68. However, what the CMS regulations provide is that MAOs will have the "same rights to recover" as the Secretary. 42 C.F.R. § 422.108(f). As analyzed above, the

government's cause of action allows for double damages only against primary plans, who do not include beneficiaries or their attorneys. In fact, this distinction is spelled out even more explicitly in another CMS regulation, section 411.24. See 42 C.F.R. § 411.24. Section 411.24(c) states, "If it is necessary for CMS to take legal action to recover from a primary payer, CMS may recover twice the amount [of the Medicare primary payment]." 42 U.S.C. § 411.24(c)(2) (emphasis added). In contrast, section 411.24(g), which governs recovery of payments "from parties that receive primary payments," including "a beneficiary, provider, supplier, physician, attorney, State agency or private insurer that has received a primary payment," includes no double-damages provision, permitting CMS only to "recover its payments." 42 U.S.C. § 411.24(g) (emphasis added). Thus, the CMS regulations do not suggest that the Private Cause of Action provision allows collection of double damages from beneficiaries or their attorneys, but only from primary plans.

In Collins, the Medicare beneficiary had already received medical expenses from a tortfeasor, and the Collins court observed that precluding suit against beneficiaries would "produce[ ] an odd result, as that interpretation would encourage beneficiaries to hide their settlements from the MAOs and provide no recourse to the MAOs against the beneficiaries for such action." Collins, 73 F. Supp. 3d at 667. However, both the Collins court and the parties in this case have overlooked another provision in section 411.24, which provides "[s]pecial rules" in circumstances including "liability insurance settlements." 42 C.F.R. § 411.24(i). Section 411.24(i) states, "If Medicare is not

reimbursed as required by paragraph (h)[8] of this section, <u>the primary payer must reimburse Medicare even though it has already reimbursed the beneficiary or other party</u>." 42 C.F.R. § 411.24(i)(1) (emphasis added). In short, section 411.24(i) explicitly addresses the situation with which the <u>Collins</u> court was concerned, and addresses the issue not by treating beneficiaries and primary plans alike, as Aetna urges the court to do here, but by clarifying that primary plans could not evade their obligations to Medicare simply through settlement with beneficiaries. <u>See</u> <u>Glover v. Liggett Group, Inc.</u>, 459 F.3d 1304 (11th Cir. 2006) ("The MSP authorizes a private cause of action against a primary plan that pays a judgment or settlement to a Medicare beneficiary, but fails to pay Medicare its share." (citing section 411.24(i))).

Aetna also cites the court to a decision from the Eastern District of Virginia, <u>Humana Insurance Company v. Paris Blank LLP</u>, in which the court held that the plaintiff, a MAO, could pursue a claim under the Private Cause of Action provision against a beneficiary and her attorneys. 187 F. Supp. 3d 676, 681. As in <u>Collins</u>, the <u>Paris Blank</u> holding relied on section 422.108(f), which equates the rights of recovery for MAOs to the rights of recovery for the government, in combination with section 411.24, which permits recovery against beneficiaries and their attorneys, as the court has just described. <u>Id.</u> at 681–82. However, section 411.24 does not provide for double damages recovery against beneficiaries and their attorneys, consistent with the text of the government's cause of action, subsection (2)(B)(iii). Thus, to conclude that beneficiaries and their attorneys may be sued under the Private Cause of Action

---

[8] Paragraph (h) states: "If the beneficiary or other party receives a primary payment, the beneficiary or other party must reimburse Medicare within 60 days." 42 C.F.R. 411.24(h).

provision would mean that MAOs would not have rights <u>equal</u> to those of the government, but rather rights <u>greater</u> than those of the government, because the Private Cause of Action provision only provides for double damages.

Relevant to this issue, the court notes that the <u>Collins</u> court interpreted the Private Cause of Action provision to allow for either single or double recovery, depending on whether a primary plan (which, for the <u>Collins</u> court, includes beneficiaries who have received settlement payments) "intentionally withh[e]ld payment." <u>Collins</u>, 73 F. Supp. 3d at 669–70. The text of the Private Cause of Action provision does not, however, provide for single recovery. As described above, the Private Cause of Action provision creates "a private cause of action for <u>damages (which shall be in an amount double the amount otherwise provided)</u> in the case of a primary plan which fails to provide payment (or appropriate reimbursement)." 42 U.S.C. § 1395y(b)(3)(A) (emphasis added). The <u>Collins</u> court reached its conclusion that the provision allowed for either single or double damages, depending on the circumstances, by effectively shifting the second parenthesis to include another clause, converting the clause "which shall be in an amount double the amount otherwise provided" to say, instead, "which shall be in an amount double the amount otherwise provided in the case of a primary plan which fails to provide payment."[9] <u>Collins</u>, 73 F. Supp. 3d at 670. In the view of this court, however, such a reading is explicitly precluded by the way Congress wrote this sentence, which unambiguously defines the damages available under the Private

---

[9] The <u>Collins</u> opinion illustrates its interpretation of the Private Cause of Action by emphasizing the two clauses that it read together: "There is established a private cause of action for damages <u>(which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide payment</u> (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A)." <u>Collins</u>, 73 F. Supp. 3d at 670 (quoting 42 U.S.C. § 1395y(b)(3)(A)).

Cause of Action provision as double damages.  See W. Heritage Inc. Co., 832 F.3d at 1240 (holding that the Private Cause of Action provision requires double damages because, "[u]nlike the Government's cause of action, the private cause of action uses the mandatory language 'shall' to describe the damages amount"); see also Mason, 346 F.3d at 38 (describing the Private Cause of Action provision as providing for "double damages against a primary plan").

Admittedly, this interpretation of the Private Cause of Action provision—that it allows for double damages against primary plans, but does not allow for recovery of payment from beneficiaries or their attorneys—conflicts with the intention of CMS that MAOs be accorded the same rights to recover as the government, see section 411.108(f), because the government's cause of action grants the United States the authority to sue beneficiaries and their attorneys for recovery of payment.  42 U.S.C. § 1395y(b)(2)(B)(iii) ("[T]he United States may recover under this clause from any entity that has received payment from a primary plan or from the proceeds of a primary plan's payment to any entity.").  CMS regulations, however, are only entitled to deference where they interpret ambiguous statutory language.  See Digital Realty Trust, Inc. v. Somers, --- S. Ct. ----, 2018 WL 987345, at *13 (Feb. 21, 2018) (declining to defer to an agency regulation where "Congress has directly spoken to the precise question at issue" (quoting Chevron, 467 U.S. at 842)).  With respect to the damages available, the language of the Private Cause of Action provision is unambiguous.

For the foregoing reasons, the court concludes that the Private Cause of Action provision permits suits for double damages against primary plans, as defined in the MSP, see title 42, section 1395y(b)(1)(2)(A)(ii), which excludes beneficiaries and their

attorneys. The court therefore grants the defendants' Motion to Dismiss the Medicare Act claims with respect to Guerrera, Carter Mario, Himmel, and Wisniowski.

2. Aetna has adequately alleged that Big Y is a primary plan

Having concluded that Aetna, an MAO, may sue under the Private Cause of Action provision, and further having concluded that Aetna may sue a primary plan, the question remains whether Aetna has adequately pled that Big Y is a primary plan. As stated above, the MSP defines primary plan, in pertinent part, as "a workmen's compensation law or plan, an automobile or liability insurance policy or plan (including a self-insured plan) or no fault insurance." 42 U.S.C. § 1395y(b)(1)(2)(A)(ii). The MSP further provides that "[a]n entity that engages in a business, trade, or profession shall be deemed to have a self-insured plan if it carries its own risk (whether by a failure to obtain insurance, or otherwise) in whole or in part." Id.

The defendants assert that Big Y, a tortfeasor, is not a "primary plan" within the meaning of the MSP. In support of this argument, the defendants cite the court to three cases: Parra, 715 F.3d 1146, Mason, 446 F.3d 36, and Woods, 574 F.3d 92. However, the court finds these cases either inapposite or, in the case of Mason, superseded by statutory amendment in December 2003. See Taransky, 760 F.3d at 313 n.5 (describing the impact of the 2003 amendment on Mason).

In Parra, the facts alleged were materially different than those before the court in this case. 715 F.3d 1146. Manuel Parra was struck by a car, hospitalized, and eventually passed away due to injuries suffered in the accident. Id. at 1150. PacifiCare, an MAO, paid his medical expenses. Id. His wife and children made a demand for wrongful death damages against the driver's GEICO automobile insurance

policy, and the MAO made a claim against the same policy for reimbursement of the medical expenses.  Id.  GEICO issued a settlement check jointly payable to the survivors and PacifiCare to be held in trust pending resolution of the parties' dispute.  Id.  The survivors then brought suit seeking injunctive and declaratory relief regarding entitlement to the settlement, and PacifiCare counterclaimed with a contract claim and a claim under the Medicare Act.  Id.  The Ninth Circuit concluded that the Private Cause of Action was not triggered because PacifiCare had not alleged that GEICO, the primary plan, had "fail[ed] to provide for primary payment."  Id. at 1154 ("PacifiCare makes no claim against GEICO, the primary plan, nor has that plan failed to provide for payment.").  While the court agrees that Parra's reasoning applies to the Private Cause of Action provision analysis as to Guerrera and her attorneys, Parra is not applicable to the analysis with respect to Big Y, because Aetna has alleged that Big Y is a primary plan who failed to appropriately reimburse Aetna, in contrast to the decision in Parra, where it was not alleged that GEICO had failed to reimburse the survivors.  See Compl. at ¶ 32.

The decision in Mason is unpersuasive for two reasons.  First, the section of the Mason opinion to which the defendants cite is specifically cabined to alleged tortfeasors, in a case where liability had not yet been determined.  Mason, 346 F.3d at 42.  Indeed, the Second Circuit distinguished an Eleventh Circuit case on the basis that, in that case, the "defendants had assumed obligations to pay for the medical costs of plaintiff class members."  Id. (discussing U.S. v. Baxter Int'l, Inc., 345 F.3d 866, 873–74 (11th Cir. 2003)).  The Mason holding is thus specific to situations in which tort liability was an open question.  Here, Aetna alleges that Big Y has paid a settlement, which is one of

the ways that responsibility for primary payment may be established according to the MSP.  <u>See</u> 42 U.S.C. § 1395y(b)(2)(B)(ii) ("A primary plan's responsibility for such payment may be demonstrated by . . . a payment conditioned upon the recipient's compromise, waiver, or release . . . .").  The facts in <u>Mason</u> are therefore materially different than Aetna's allegations.

In a portion of the <u>Mason</u> opinion to which the defendants do not cite, the Second Circuit went further to opine that the MSP statute likely does not apply to tort litigation writ large.  <u>Mason</u>, 346 F.3d at 42–43 (noting that the MSP "has apparently never been successfully used to pursue a non-insurance entity" and that "courts have rejected all efforts to apply the statute's heavy remedy of double damages in the context of tort litigation" (quoting <u>U.S. v. Philip Morris Inc.</u>, 156 F. Supp. 2d 1, 5 (D.D.C. 2001)).  Two months after Mason was published, however, Congress amended the Medicare Act to include tortfeasors in the definition of "primary plan," to add the following: "An entity that engages in a business, trade, or profession shall be deemed to have a self-insured plan if it carries its own risk (whether by a failure to obtain insurance, or otherwise) in whole or in part."  42 U.S.C. § 1395y(b)(2)(A)(ii).  Thus, as multiple courts have since noted, this holding from <u>Mason</u> is no longer good law.  <u>See, e.g.</u>, <u>Taransky</u>, 760 F.3d at 313–14.

Finally, the defendants cite the court to <u>Woods</u>, a case in which the Second Circuit held that the Private Cause of Action provision is not a <u>qui tam</u> statute.  <u>Woods</u>, 574 F.3d at 101.  In <u>Woods</u>, the Second Circuit held that the Private Cause of Action provision "does not create a <u>qui tam</u> action, but rather merely enables a private party to bring an action to recover from a private insurer only where that private party has itself

suffered an injury because a primary plan has failed to make a required payment to or on behalf of it." Id. From this statement, the defendants urge the court to conclude that it is fatal to Aetna's claim that Aetna failed to allege that any of the defendants, including Big Y, were primary plans. Def.'s Mem. at 5–6. The court agrees with Aetna, however, that this allegation elevates form over substance. Pl.'s Response at 6. Woods does not stand for the proposition that an entity seeking to exercise the Private Cause of Action provision must recite the phrase "primary plan" in order to survive a motion to dismiss. The operative question is not whether Aetna has recited the phrase "primary plan," but whether Aetna has pled "factual content that allows the court to draw the reasonable inference" that Big Y is a primary plan. Iqbal, 556 U.S. 662, 678; see also infra Section VII (discussing the conclusory nature of inserting the phrase "primary plan" in the Complaint). Furthermore, the court notes that, although the Woods opinion describes the Private Cause of Action provision as a cause of action for a "private party" to "recover from a private insurer," this language does not preclude Aetna's cause of action against Big Y, as Aetna is a "private party" and, according to the MSP definition, Big Y is a "private insurer."

In their Reply, the defendants assert that the "2003 amendment to the definition of 'primary plan' does not change the analysis when one looks to Second Circuit precedent." Def.'s Reply at 8. The defendants do not attempt to argue that Mason was unaffected by the 2003 amendment, but rather note that Woods was decided six years after the 2003 amendment was passed and "held that the private right of action created by § 1395y(b)(3) was not equal to (and was narrower than) 'the governmental action' permitted by § 1395y(b)(2)(B)." Id. The holding to which the defendants refer, however,

relates to the fact that the plaintiff in <u>Woods</u> brought suit without alleging that he had personally suffered an injury. <u>Id.</u>; <u>see</u> <u>Woods</u>, 574 F.3d at 100. The court finds this argument by the defendants puzzling, as this holding in <u>Woods</u> is completely irrelevant to the case at bar, where no one, including the defendants, has argued that Aetna has failed to allege injury. It is the court's view that this argument by the defendants has no relevance to either the 2003 amendment or to this case more generally.

In sum, <u>Parra</u>, <u>Mason</u>, and <u>Woods</u> are either readily distinguishable from this case or, in the case of <u>Mason</u>, reliant on a materially different version of the MSP.

The defendants also assert that <u>Avandia</u>, cited by Aetna in its Complaint, is inapplicable in this case because "the complaint lacks any allegation that a defendant is a 'primary plan.'" Def.'s Mem. at 6. However, Aetna's Complaint alleges that Big Y paid Guerrera a $30,000 settlement. Compl. at ¶ 25. Although Aetna does not expressly allege that Big Y is a "self-insured plan," the allegation that Big Y paid Guerrera a settlement is sufficient, on its own, to plausibly allege that Big Y is a "primary plan" within the meaning of the MSP. In the government's cause of action provision, the MSP provides as follows:

> A primary plan's responsibility for such payment may be demonstrated by a judgment, a payment conditioned upon the recipient's compromise, waiver, or release (whether or not there is a determination or admission of liability) of payment for items or services included in a claim against the primary plan or the primary plan's insured, or by other means.

42 U.S.C. § 1395y(b)(2)(B)(ii). Although this language is not expressly stated or incorporated in the Private Cause of Action provision, the phrase "primary plan" implicitly incorporates this responsibility-triggering provision because a primary plan, by definition, is responsible for payment. <u>See</u> <u>MSP Recovery, LLC v. Allstate Ins. Co.</u>, 835

F.3d 1351, 1358–59 (11th Cir. 2016) (concluding that the "demonstrated responsibility requirement" is incorporated by reference into the Private Cause of Action provision).  In other words, the phrase "primary plan" in the Private Cause of Action provision "presupposes an existing obligation . . . to pay for covered items or services."  W. Heritage, 832 F.3d at 1237; see also Paraskevas v. Price, No. 16-CV-9696, 2017 WL 5957101, at *10 (N.D. Ill. Nov. 27, 2017) ("[T]he Medicare Act allows for reimbursement recovery from a tortfeasor.").  Here, Aetna's allegation that Big Y paid a settlement to Guerrera (or her attorneys) to resolve a personal injury claim is sufficient to bring Big Y within the definition of "primary plan."  Aetna has therefore adequately pled facts that allow the plausible inference that Big Y is responsible for the misconduct alleged.  The court therefore denies the defendants' Motion to Dismiss with respect to Big Y.

C.    When Suit Is Proper

The final issue for the court with respect to interpretation of the Private Cause of Action provision is to determine whether Big Y, as a primary plan, has "fail[ed] to provide for primary payment (or appropriate reimbursement)" within the meaning of the MSP.  42 U.S.C. § 1395y(b)(3)(A).

In its Complaint, Aetna alleges that Big Y was notified of Aetna's lien on Guerrera's medical expenses, but nevertheless paid Guerrera and/or her attorneys "the full amount of the Settlement Proceeds."  Compl. at ¶¶ 26–32.  Arguably, the fact that Big Y paid a settlement means that it did not "fail[ ] to provide for primary payment."  42 U.S.C. § 1395y(b)(3)(A).  However, the court concludes that Big Y did not satisfy the obligation outlined by the Private Cause of Action provision, because the Private Cause of Action provision also includes the clause "or appropriate reimbursement."  Id. (emphasis added).  The word "appropriate" signals that primary plans may not satisfy

their obligations under the MSP simply by paying a settlement to a beneficiary, where they are on notice that a secondary payer has already paid the beneficiary's medical expenses.

CMS regulations support this interpretation. As described above, see supra Section V(B)(1), section 411.24 states,

> In the case of liability insurance settlements and disputed claims under employer group health plans, workers' compensation insurance or plan, and no-fault insurance, the following rule applies: If Medicare is not reimbursed as required by paragraph (h) of this section, the primary payer must reimburse Medicare even though it has already reimbursed the beneficiary or other party.

42 C.F.R. § 411.24(i)(1) (emphasis added); see Glover, 459 F.3d at 1310 ("The MSP authorizes a private cause of action against a primary plan that pays a judgment or settlement to a Medicare beneficiary, but fails to pay Medicare its share." (citing section 411.24(i))). The "paragraph (h)" to which section 411.24(i) refers provides that "[i]f the beneficiary or other party receives a primary payment, the beneficiary or other party must reimburse Medicare within 60 days."[10] 42 C.F.R. § 411.24(i)(1). Taken together, these two provisions describe the facts alleged by Aetna, namely that a beneficiary and/or her attorneys received a primary payment from a "liability insurance

---

[10] Although section 411.24 specifically describes situations in which Medicare has made a conditional payment, as opposed to an MAO, elsewhere CMS has stated that an "MA[O] will exercise the same rights to recover from a primary plan, entity, or individual that the Secretary exercises under the MSP regulations." 42 C.F.R. § 422.108(f). For that reason, the court concludes that section 411.24 applies to situations in which conditional payment is made by MAOs.

settlement."[11]  To the extent that the MSP is vague with respect to what "appropriate" reimbursement means in the context of a settlement agreement, section 411.24 clarifies the position of CMS that payment to the wrong entity, namely the beneficiary, is not "appropriate" reimbursement.

Faced with a set of facts similar to those before the court in this case, the Eleventh Circuit concluded that a primary plan was liable to an MAO for double damages after settling a case with a beneficiary and failing to reimburse Medicare.  See W. Heritage Ins. Co., 832 F.3d at 1239–40.  The Eleventh Circuit looked to CMS regulations to determine what "appropriate reimbursement" meant:

> If a beneficiary or other party fails to reimburse Medicare within 60 days of receiving a primary payment, the primary plan 'must reimburse Medicare even though it has already reimbursed the beneficiary or other party.'  42 C.F.R. § 411.24(i)(1).  This regulation applies equally to an MAO.  See id. § 422.108(f).  Thus, Western's payment to Ms. Reale or any other party is insufficient to extinguish its prospective reimbursement obligation to Humana.  Sixty days after Western tendered the settlement to the Reales and their attorney, because no party reimbursed Humana, Western became obligated to directly reimburse Humana.  See id. § 411.24(i)(1).  Even after receiving Humana's demand for reimbursement, Western has declined to do so.  Therefore, Western failed to provide for 'appropriate reimbursement' as defined by the CMS regulations.

Id.  The court finds the reasoning of the Eleventh Circuit to be relevant and persuasive, and similarly concludes that the facts alleged here, if true, constitute a failure to

---

[11] The court notes that, while there are no allegations in Aetna's Complaint that a liability insurance plan paid the settlement, a tortfeasor that pays a settlement is considered a "self-insured plan" for the purposes of the MSP.  See 42 U.S.C. § 1395y(b)(2)(A)(ii) ("An entity that engages in a business, trade, or profession shall be deemed to have a self-insured plan if it carries its own risk (whether by a failure to obtain insurance, or otherwise) in whole or in part.").  Therefore, the court concludes that the facts as alleged in the Complaint put this case in the category of a "liability insurance settlement." 42 C.F.R. § 411.24(i)(1).

appropriately reimburse Aetna in violation of the MSP.

In sum, the court concludes that, pursuant to both the text of the Private Cause of Action provision and the CMS regulations interpreting the MSP more broadly, Aetna has adequately alleged that Big Y's settlement payment to Guerrera and/or her attorneys was not "appropriate reimbursement." Aetna has therefore pled facts sufficient to state a claim pursuant to the Private Cause of Action provision section 1395y(b)(3)(A) of title 42 of the United States Code against Big Y. Therefore, the defendant's Motion to Dismiss Aetna's Medicare Act claims against Big Y is denied.

## VI. SUPPLEMENTAL JURISDICTION

Aetna's Complaint consists of six counts, including claims for declaratory and injunctive relief, attorneys' fees, an equitable restitution claim, a breach of contract claim, and a breach of fiduciary duty claim, as noted above. See generally Compl.

In addition to their request that the court dismiss Aetna's Medicare Act claims, the defendants urge the court to decline to exercise supplemental jurisdiction over Aetna's state law claims. Def.'s Mem. at 11 ("Because the plaintiff's federal claims are deficient and subject to dismissal . . . the proper course is for this Court to decline to hear these state law claims.").

"In the absence of diversity jurisdiction, a federal court presented with both federal and state claims may hear the state claims only if they are so closely related to the federal questions as to form part of the same 'case or controversy' under Article III." Lussier, 211 F.3d at 704. Furthermore, even where a federal court may exercise supplemental jurisdiction, whether or not to do so remains a discretionary determination influenced by several factors, including "judicial economy, convenience, fairness, and comity." Valencia ex rel. Franco v. Lee, 316 F.3d 299, 305 (2d Cir. 2003) (quoting

Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988)) (noting the distinction between "the power of a federal court to hear state-law claims and the discretionary exercise of that power").  These factors are codified in section 1367(c) of title 28 of the United States Code, which states that district courts may decline to exercise supplemental jurisdiction if "the claim raises a novel or complex issue of State law," the state claims "substantially predominate[ ]" over the federal claims, the district court has dismissed all federal claims, or in other "exceptional circumstances."  28 U.S.C. § 1367(c).

In this case, Aetna asserts that the facts underlying the federal claims and the facts underlying the state claims are part of the "same nucleus of facts," specifically the failure of Guerrera, her attorneys, and Big Y to reimburse Aetna for conditional payment of Guerrera's medical expenses arising from her injury at Big Y.  Pl.'s Response at 31.  The court agrees.  Whether Aetna paid Guerrera's medical expenses, whether Aetna was reimbursed for those expenses, and who, if anyone, should have reimbursed Aetna are factual questions that underlie all the claims raised in this case, federal and state alike.

The court further concludes that the balance of the discretionary factors militates in favor of exercising supplemental jurisdiction.  "Once a common nucleus [of fact] is found, a federal court's exercise of supplemental jurisdiction, 'while not automatic, is a favored and normal course of action.'"  Rivera v. Ndola Pharmacy Corp., 497 F. Supp. 2d 381, 387 (E.D.N.Y. 2007) (quoting Promisel v. First Am. Artificial Flowers, 943 F.2d 251, 254 (2d Cir. 1991)).  The defendants' argument to the contrary is largely based on an assumption that the court will dismiss all the federal law claims which, as described

above, the court has declined to do with respect to Big Y.  See Def.'s Mem. at 11.  The

defendants also assert that, "[g]iven the small sum of money at issue in this case, these

claims have no place in federal court."  Id.  The relatively small amount of money at

stake, however, does not constitute an "exceptional circumstance[ ]" that would justify

the court's declining jurisdiction; the small amount of money is what is at issue in the

federal claim.  28 U.S.C. § 1367(c).  Nor do the state law claims "raise[ ] a novel or

complex issue of State law" or "substantially predominate" over the Medicare Act claim.

Id.

For these reasons, the court concludes that exercising supplemental jurisdiction

over Aetna's state law claims against the defendants is appropriate and denies the

defendants' Motion to Dismiss with respect to the state law claims.[12]

## VII.    AETNA'S MOTION TO AMEND THE COMPLAINT (DOC. NO. 28)

In addition to opposing the defendants' Motion to Dismiss, Aetna also filed a

Cross-Motion to Amend its Complaint (Doc. No. 38).  In its Response to the Motion to

Dismiss, Aetna maintains that amendment is not necessary, but requests leave to

amend its Complaint "should this Court determine that Aetna's Complaint, as it is

currently drafted, fails to create subject matter jurisdiction over Aetna's claims, or fails to

state viable claims against Defendants."  Pl.'s Response at 33.  Aetna attached a

proposed amended complaint to its Response.  See Exh. 2, Pl.'s Response (Doc. No.

39-4) (proposed amended complaint with edits highlighted).  Aetna asserts that the

proposed amendments "are neither conclusory nor baseless, simply amplify and expand

---

[12] The court notes that the defendants did not challenge Aetna's state law claims on the merits.
See Def.'s Mem. at 11 ("Though the defendants maintain that the plaintiff's claims likewise will fail under
state law, the fact remains that the proper forum for any such claims to be litigated, if they are to be
litigated, is in state court.").

the allegations already contained in the Complaint, and do not add any new parties or claims." Pl.'s Response at 27–28.  In pertinent part, Aetna has proposed an amendment that specifically alleges that Big Y is a "primary plan."  See Exh. 2, Pl.'s Response at ¶ 39.

In their Reply, the defendants argue that this amendment is both conclusory and baseless because, according to the defendants, Aetna "acknowledges that it has no idea whether Big Y or some 'completely separate,' 'undisclosed entity' is in fact the 'primary plan' that it should attempt to sue."[13]  Def.'s Reply at 10.

In light of the court's conclusion that Aetna adequately alleged that Big Y is a primary plan in its initial Complaint, the court finds that amendment is unnecessary. See supra Section V(B)(2).  In addition, the court agrees with the defendants that the proposed amendments are conclusory, in that they largely insert legal terms as opposed to facts.  See Def.'s Reply at 10 ("Simply inserting the term 'primary plan' . . . is a textbook example of 'conclusory.'").  However, the court disagrees with the defendants' argument that Aetna has failed to allege the necessary facts to show that Big Y fits within the statutory definition of a "primary plan."  See id.  The problem with the proposed amendments is not that they are unsupported by facts, but that they are unnecessary in light of the facts that were previously alleged in the Complaint.

Therefore, Aetna's Cross-Motion to Amend the Complaint (Doc. No. 38) is denied

---

[13] The court notes that the defendants' argument that Aetna does not know who the primary plan is—made with respect to the proposed amended complaint—could, arguably, apply to the initial Complaint.  The defendants did not raise this argument with respect to the initial Complaint, however, presumably because that is a dispute of fact not properly considered at the pleading stage.  See Iqbal, 556 U.S. at 678 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' (emphasis added) (quoting Twombly, 550 U.S. at 570).

with respect to the amendments as proposed in Exhibit 2 to Aetna's Response.

That being said, it is the court's view that Aetna's Complaint is unclear as to which claims are specifically brought pursuant to the Medicare Act, as opposed to state law, and against whom each state claim is brought. <u>See</u> Def.'s Mem. at 11. In light of the court's Ruling with respect to the Medicare Act claims, the court concludes that it would be expedient, and consistent with the standard established in Rule 15 of the Federal Rules of Civil Procedure, to permit Aetna to amend its Complaint—consistent with this Ruling—in order to clarify its claims and specify, with respect to the state claims in particular, against whom the claims are alleged. <u>See</u> F.R.C.P. 15(a)(2) ("The court should freely give leave [to replead] when justice so requires."). Aetna is therefore given leave to replead within twenty-one days of the date of this Ruling.

## VIII. CONCLUSION

For the foregoing reasons, the defendants' Motion to Dismiss (Doc. No. 36) is **GRANTED IN PART** and **DENIED IN PART**. Aetna's claims pursuant to the Medicare Act are dismissed with respect to Guerrera, Carter Mario, Hammil, and Wisniowski. Aetna's Medicare Act claim will proceed against Big Y. Furthermore, the court will exercise supplemental jurisdiction over Aetna's state law claims.

In light of the court's Ruling with respect to the Motion to Dismiss, Aetna's Cross-Motion to Amend the Complaint (Doc. No. 38) is **DENIED** with respect to the proposed amended complaint. However, Aetna is given leave to replead, consistent with this Ruling, within twenty-one days of the issuance of this Ruling, to clarify which claims are federal law claims, and against whom each state claim is alleged.

**SO ORDERED**.

Dated this 13th day of March 2018 at New Haven, Connecticut.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge