**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| AETNA LIFE INSURANCE COMPANY,<br><br>                              Plaintiff,<br><br>v.<br><br>NELLINA GUERRERA, CARTER MARIO INJURY LAWYERS, and BIG Y FOODS, INC.,<br><br>                              Defendants. | INDEX NO. 3:17-cv-00621-JCH<br><br><br>**AMENDED COMPLAINT** |

Plaintiff, the Aetna Life Insurance Company ("Aetna"), complains and alleges as follows:

## NATURE OF ACTION

Aetna brings this action seeking damages and other equitable relief based upon the failure of Nellina Guerrera, Carter Mario Injury Lawyers, and Big Y Foods, Inc. (collectively hereinafter referred to as "Defendants") to appropriately reimburse Aetna for conditional payments of Medicare benefits Aetna made as a Medicare Advantage Organization under 42 U.S.C. §1395, *et seq*.; to abide by the contractual terms of the Medicare Advantage employee healthcare benefit plan governed by Aetna; and/or to honor Aetna's rights as a lienholder.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 because the Complaint raises claims arising under the Constitution, laws or treaties of the United States (federal question jurisdiction), specifically 42 U.S.C. § 1395y ("Medicare") and its implementing regulations, 42 U.S.C. § 1395y(b) (the "Medicare Secondary Payer Act" or "MSP Act"), and one of its sub-divisions, 42 U.S.C. § 1395y(b)(3)(A) (the "MSP Private Cause of Action Provision").

2.      The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over state law claims that form a part of the same case or controversy in the Complaint.

3.      Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(b) because the parties reside or are located in Connecticut and because a substantial part of the actions or events giving rise to this action occurred in this District

4.      Aetna is a Medicare Advantage Organization ("MAO") engaged in the business of insurance with its principal place of business in Hartford, Connecticut.

5.      Upon information and belief, Defendant Nellina Guerrera ("Guerrera") resides at 7 Hammertown Road, Monroe, CT 06484.

6.      Upon information and belief, Defendant Carter Mario Injury Lawyers ("Carter Mario") is a law firm with various locations throughout Connecticut.

7.      Upon information and belief, Defendant Big Y Foods, Inc. ("Big Y") is a corporation with an address at P.O. Box 7840, Springfield, MA 01102.  Big Y also has a location called Big Y World Class Market located at 535 Monroe Turnpike, Monroe, CT 06468.

8.      At all relevant times, Aetna issued the Aetna Medicare Plan (PPO) ("MAO Plan") in which Guerrera was enrolled.

9.      At all relevant times, Guerrera was insured by the MAO Plan issued by Aetna, and received benefits under the terms of the Plan.

## GENERAL ALLEGATIONS

10.     On or about February 20, 2015, Guerrera allegedly sustained personal injuries at the Big Y World Class Market located at 535 Monroe Turnpike, Monroe, CT 06468 for which she subsequently sought and received medical care.

11.     At the time of her injury, and at all relevant times thereafter, Guerrera was a Medicare-eligible individual who was enrolled in and maintained health insurance coverage through the MAO Plan administered by Aetna.  The MAO Plan is a Medicare Advantage health maintenance plan under 42 U.S.C. §§ 1395w-21 through 1395w-28 and 42 U.S.C. § 1395mm.

12.     Aetna is a federally qualified Private Fee For Service Plan that offers Medicare Advantage Plans under a contract with the Centers for Medicare and Medicaid Services ("CMS").

13.     Pursuant to the terms of the MAO Plan, Aetna paid significant medical expenses on behalf of Guerrera as a result of this accident.

14.     The sums expended by Aetna on behalf of Guerrera pursuant to the MAO Plan are specifically identifiable amounts itemized by Guerrera's healthcare providers from the date of said accident to the present date, which sum totals approximately $9,854.16 (hereinafter referred to as the "Specifically Identified Funds").  Attached as **Exhibit A** is a list of the treatments paid for by Aetna.

15.     Under the terms of the MSP Act and CMS regulations, Big Y, as a self-insured primary payer or plan, was responsible for the payment of the Specifically Identified Funds. 42 U.S.C. § 1395y(b)(2)(A).

16.     Aetna was not obligated to pay the Specifically Identified Funds, but did so conditionally as a secondary payer under the MSP Act.  42 U.S.C. § 1395y(b)(2)(A); *see also* 42 U.S.C. § 1395y(b)(2)(B)(i).

17.     Big Y, however, is obligated as a self-insured primary payer or plan to reimburse Aetna for its conditional payment of the Specifically Identified Funds.   42 U.S.C. § 1395y(b)(2)(B)(i).

18.     In addition, according to the contractual terms of the MAO Plan, immediately upon paying or providing any benefit to Guerrera, Aetna was subrogated to and succeeded to all rights of recovery Guerrera had against the tortfeasor under any legal theory for the amount of Aetna's conditional payments.   *See* **Exhibit B**, MAO Plan provided by Aetna, at 106-108. Specifically, the MAO Plan states

> "[I]f you receive payment from any person, entity or insurer responsible for causing your injury, illness or condition or you receive payment from any person, entity or insurer listed as a primary payer above, your MA plan has the right to recover from, and be reimbursed by you for all conditional payments the plan has made or will make as a result of that injury, illness or condition."

*Id.* at 107.

19.     In the event the MAO Plan makes such payments, it shall be granted a lien which "may be enforced against any party who possesses funds or proceeds representing the amount of benefits paid by the [MAO] Plan including, but not limited to, you, your representatives or agents, any person, entity or insurer responsible for causing your injury, illness or condition or any person, entity or insurer listed as a primary payer above."  *Id.*

20.     By accepting the benefits provided by Aetna, Guerrera "acknowledge[d] that the [MAO Plan's] recovery rights are a first priority claim and are paid to the [MAO Plan] before

any other claims for your damages . . . .  Your MAO plan is not required to participate in or pay court costs or attorney fees to any attorney hired by you to pursue your damage claims." *Id.*

21.     Further, the MAO Plan requires Guerrera and all of her representatives to "fully cooperate with the [MAO Plan's] efforts to recover its benefits paid" and "shall provide all information requested by the [MAO Plan] or its representatives." *Id.* at 108.

22.     The MAO Plan specifically identifies the penalties for non-compliance:

> "Failure to provide requested information or failure to assist your [MAO Plan] in pursuit of its subrogation or recovery rights may result in you being personally responsible for reimbursing the [MAO Plan] for benefits paid relating to the injury, illness or condition as well as for the [MAO Plan's] reasonable attorney fees and costs incurred in obtaining reimbursement from you."

*Id.* at 108.

23.     Upon information and belief, Guerrera retained Defendant Carter Mario to represent her in her claim against Defendant Big Y for the injuries she sustained on February 20, 2015.

24.     Upon information and belief, Guerrera, with the assistance of Carter Mario, submitted a claim to Big Y seeking recovery for the injuries she sustained on or about February 20, 2015 at the Big Y World Class Market located at 535 Monroe Turnpike, Monroe, CT 06468 (hereinafter referred to as "The Claim").

25.     Upon information and belief, Guerrera alleged in The Claim that the acts and/or omissions of Big Y caused the personal injuries she sustained on or about February 20, 2015, and were responsible for the injuries and damages sustained in the accident, including medical expenses.

26.     Upon information and belief, Carter Mario attorneys Sean Hammil and Danielle Wisniowski represented Guerrera in The Claim, and acted as agents for Guerrera and Carter Mario.

27.     Upon information and belief, Mr. Hammil's and Ms. Wisniowski's representation of Guerrera in The Claim was within the scope of their employment with Carter Mario.

28.     Guerrera settled The Claim on or about September 15, 2016 for $30,000 (hereinafter referred to as the "Settlement Proceeds"), which was paid by Big Y as a self-insured primary payer or plan.

29.     Prior to settling The Claim, nearly a year prior on September 22, 2015, all Defendants were put on notice of Aetna's lien against and right to reimbursement out of any recovery by Ms. Guerrera.  Attached as **Exhibit C** is a true and correct copy of the September 22, 2015 letters sent to Defendants.

30.     Another letter was sent to Carter Mario, via Mr. Hammil, on December 4, 2015. Attached as **Exhibit D** is a true and correct copy of the December 4, 2015 letter.

31.     Further, additional letters were sent to Big Y on August 26, 2016 and September 15, 2016.  Attached as **Exhibit E** are true and correct copies of the August 26, 2016 and September 15, 2016 letters sent to Big Y.

32.     On multiple occasions, including November 18, 2015 and December 4, 2015, a representative for Aetna spoke with Carter Mario, specifically Mr. Hammil or Ms. Wisniowski, regarding Aetna's lien and right to reimbursement.  Mr. Hammil and/or Ms. Wisniowski, as agents of Guerrera and Carter Mario, refused to provide any information regarding Guerrera's claim against Big Y, and refused to acknowledge Aetna's lien against and right to reimbursement out of any recovery by Ms. Guerrera.

33.     Additionally, on multiple occasions, including September 17, 2015, September 22, 2015, December 4, 2015, March 10, 2016, September 15, 2016, and October 25, 2016, a representative for Aetna spoke with Big Y regarding Aetna's lien and right to reimbursement.

34.     On March 10, 2016, Big Y agreed that it would not send the full amount of any settlement to Guerrera and/or Carter Mario, without first satisfying Aetna's lien against and right to reimbursement out of the Settlement Proceeds.

35.     However, Big Y reneged on this agreement, and sent the full amount of the Settlement Proceeds to Guerrera and/or Carter Mario.

36.     On December 19, 2016, a letter was provided to Defendants requesting cooperation and reimbursement/satisfaction of Aetna's lien.  Attached as **Exhibit F** is a true and correct copy of the December 19, 2016 letter sent to Defendants.   This letter provides contractual, statutory, and case law support for Aetna's request.

37.     On December 28, 2016, Ms. Wisniowski, on behalf of Carter Mario and Guerrera, responded by refusing to acknowledge Aetna's lien against and right to be reimbursed out of the Settlement Proceeds.  Attached as **Exhibit G** is a true and correct copy of the December 28, 2016 letter from Ms. Wisniowski.

38.     On February 24, 2017, Aetna again requested cooperation from Carter Mario and Ms. Wisniowski, but Carter Mario and Ms. Wisniowski refused to cooperate or provide any information regarding Guerrera's claim against Big Y.  Attached as **Exhibit H** is a true and correct copy of the February 24, 2017 email chain.

39.     As of this date, Defendants continue to refuse to acknowledge Aetna's lien against and right to reimbursement out of the Settlement Proceeds.

40.     As a secondary payer, Aetna was not obligated to make payments on behalf of Guerrera, but did so conditionally pursuant to the MSP Act.

41.     Big Y, as the liable tortfeasor, was responsible for the primary payment of Guerrera's medical expenses.

42.     At the time Big Y agreed to settle Guerrera's claim, Big Y was the primary payer or plan, as defined under the MSP Act, and was required to appropriately reimburse Aetna pursuant to the MSP Private Cause of Action Provision.

43.     Aetna has not been appropriately reimbursed for its conditional payments in that the primary payer or plan – Big Y – paid all of the Settlement Proceeds to Guerrera and/or her representatives.

44.     Defendants have made a recovery as a result of the settlement of The Claim.  A portion of that settlement rightfully belongs to Aetna as a lienholder under the terms of the MAO Plan.  The portion of that settlement that rightfully belongs to Aetna is in the possession and/or control of Defendants, all or some of whom have refused to acknowledge and satisfy Aetna's lien and/or have actively breached or assisted other in breaching the terms of the MAO Plan in so refusing to acknowledge and satisfy Aetna's lien.

## FIRST CAUSE OF ACTION

### REIMBURSEMENT UNDER MSP ACT AND
### MSP PRIVATE CAUSE OF ACTION PROVISION

#### (Against Big Y)

45.     Aetna repeats and re-alleges paragraphs 1 through 44, as though set forth in full herein.

46.     Under the MSP Act, Medicare cannot pay medical expenses when payment has been made or can reasonably be expected to be made by a primary plan, which is defined as "a

workmen's compensation law or plan, an automobile or liability insurance policy or plan (including a self-insured plan) or no fault insurance . . . ."  42 U.S.C. § 1395y(b)(2)(A).  An entity that engages in a business, trade, or profession has a self-insured plan "if it carries its own risk (whether by a failure to obtain insurance, or otherwise) in whole or in part."  *Id.*

47.     If a primary plan has not made or cannot reasonably be expected to make payment, Medicare can make a conditional payment.  42 U.S.C. § 1395y(b)(2)(B)(i).  Since Medicare remains the secondary payer, the primary plan must reimburse Medicare for the conditional payment.  *Id.*

48.     The reimbursement obligations of a primary plan, and any entity that receives payment from a primary plan, are triggered once it is demonstrated that the primary plan was responsible to make the conditional payments made by Medicare.  42 U.S.C. § 1395y(b)(2)(B)(ii).  Such responsibility can be demonstrated by, among other ways, "a payment conditioned upon the recipient's compromise, waiver, or release (whether or not there is a determination or admission of liability) of payment for items or services included in a claim against the primary plan or the primary plan's insured."  *Id.*; *see also* 42 C.F.R. § 411.22 (b)(3) (noting that a primary payer's responsibility for payment may be demonstrated by a "settlement, award, or contractual obligation.").

49.     The MSP Private Cause of Action Provision provides a right of action (which includes an award of double damages) when a primary plan fails to reimburse conditional payments.  *See* 42 U.S.C. § 1395y(b)(3)(A) ("There is established a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) . . . .").

50.     According to the Centers for Medicare and Medicaid Services ("CMS"), Aetna, as an MAO, has "the same rights to recover from a primary plan, entity, or individual that the Secretary exercises under the MSP regulations . . . ."  42 C.F.R. § 422.108(f).

51.     The MSP Act, specifically the MSP Private Cause of Action Provision, has been recognized to afford an MAO, such as Aetna, with a private right of action to recover for conditional payments it made for health care expenses and, where reimbursement is refused, double damages.  *See, e.g., In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 685 F.3d 353, 359 (3d Cir. 2012) (determining that the MSP Act provides MAOs with "a private cause of action for damages . . . placing no limitations upon which private (i.e., non-governmental) actors can bring suit for double damages when a primary plan fails to appropriately reimburse any secondary payer.").

52.     As an MAO, Aetna was a secondary payer that was not obligated to expend the Specifically Identified Funds on behalf of Guerrera.

53.     Aetna expended the Specifically Identified Funds on behalf of Guerrera as conditional payments under the MSP Act.

54.     As a settling tortfeasor, Big Y was a primary payer or plan responsible for reimbursing Aetna under the MSP Act.  *See* 42 U.S.C. § 1395y(b)(2)(B)(i); *see also* 42 U.S.C. § 1395y(b)(2)(B)(ii); 42 C.F.R. § 411.22 (b)(3).

55.     Despite having actual knowledge of Aetna's conditional payments and claim for reimbursement, and despite having promised to reimburse Aetna, Big Y sent all of the Settlement Proceeds, which included the Specifically Identifiable Funds, directly to Guerrera and/or Carter Mario without reimbursing Aetna, and has to date refused to reimburse Aetna.

56.     Big Y's refusal to reimburse Aetna is a violation of the MSP Act, and specifically 42 U.S.C. §§ 1395y(b)(2)(B)(i) and 1395y(b)(2)(A).

57.     Big Y's violation of 42 U.S.C. § 1395y(b)(2)(A) entitles Aetna to recover double damages ($19,708.32) from Big Y as a matter of law pursuant to the MSP Private Cause of Action Provision.

<u>**SECOND CAUSE OF ACTION**</u>

**BREACH OF WRITTEN CONTRACT**

**(Against Guerrera and Carter Mario)**

58.     Aetna repeats and re-alleges paragraphs 1 through 57, as though fully set forth in full herein.

59.     The MAO Plan is a valid and enforceable contract entered into by Guerrera and Aetna, to the extent Aetna offered to provide Guerrera with health insurance coverage subject to certain terms and conditions in return for the payment of premiums, Guerrera accepted Aetna's offer by voluntarily executing certain enrollment documents and paying certain premiums, and Aetna provided Guerrera with health insurance in return.

60.     Aetna fully and completely performed its obligations to Guerrera under the MAO Plan by, among other things, expending the Specifically Identified Funds on Guerrera's behalf for treatment rendered following her alleged fall.

61.     By not reimbursing or ensuring the reimbursement of Aetna for the Specifically Identified Funds expended conditionally on her behalf, Guerrera has breached her duties under the explicit terms of the MAO Plan by:

        a.      failing to reimburse Aetna for the conditional payments made by
                Aetna on behalf of Guerrera (*see* Ex. B at 107 ("[I]f you receive

payment from any person, entity or insurer responsible for causing your injury, illness or condition or you receive payment from any person, entity or insurer listed as a primary payer above, your MA plan has the right to recover from, and be reimbursed by you for all conditional payments the plan has made or will make as a result of that injury, illness or condition.");

b.   failing to satisfy Aetna's lien on the Settlement Proceeds (*see id.*);

c.   failing to cooperate and assist Aetna in enforcing its rights to reimbursement (*see id.* at 108 (requiring Guerrera and her representatives to "fully cooperate with the [MAO Plan's] efforts to recover its benefits paid" and "shall provide all information requested by the [MAO Plan] or its representatives."); and

d.   failing to preserve Aetna's rights under the MAO Plan (*see generally* Ex. B at 106-108).

62.   Moreover, the failure of Guerrera's agents and representatives, namely Carter Mario, Mr. Hammil, and Ms. Wisniowski, to cooperate and assist Aetna in enforcing its lien against and right to reimbursement out of the Settlement Proceeds constitutes a breach of the MAO Plan (*see id.* at 108), and said breach is directly and/or vicariously chargeable against Guerrera as their principle.

63.   As a result of the Guerrera's breach of the MAO Plan, she is obligated to reimburse and satisfy the lien held by Aetna in an amount not less than $9,854.16 (the amount of its conditional payments), plus interest and attorney's fees and costs associated with the pursuit of recovery of this amount. *Id.* at 108 ("Failure to provide requested information or failure to

assist [Aetna] in pursuit of its subrogation or recovery rights may result in you being personally responsible for reimbursing [Aetna] for benefits paid relating to the injury, illness or condition as well as for [Aetna's] reasonable attorney fees and costs incurred in obtaining reimbursement from you.").

64.     Upon information and belief, Carter Mario was paid and/or holds funds or proceeds representing the amount of benefits conditionally paid by Aetna on behalf of Guerrera. As such, Aetna's lien can be enforced against Carter Mario in an amount not less than $9,854.16 (the amount of its conditional payments).   *Id.* at 107 (granting Aetna a lien which "may be enforced against any party who possesses funds or proceeds representing the amount of benefits paid by the [MAO] Plan including, but not limited to, you, your representatives or agents, any person, entity or insurer responsible for causing your injury, illness or condition or any person, entity or insurer listed as a primary payer above.").

## <u>THIRD CAUSE OF ACTION</u>

## **BREACH OF FIDUCIARY DUTY**

### **(Against All Defendants)**

65.     Aetna repeats and re-alleges paragraphs 1 through 64, as though fully set forth in full herein.

66.     By accepting benefits from Aetna under the MAO Plan, a fiduciary relationship was created and Guerrera owed Aetna a duty to protect and ensure the satisfaction of Aetna's lien.

67.     Further, Carter Mario, through its agents Mr. Hammil and Ms. Wisniowski, also owed Aetna a fiduciary duty as Guerrera's agent and representative in negotiating a recovery of The Claim while aware of Aetna's lien.

68.     Big Y also owed a fiduciary duty to Aetna to not impede Aetna's lien, as soon as Big Y became aware of that lien and/or when Big Y agreed to protect Aetna's lien by not paying all of the Settlement Proceeds to Guerrera and/or Carter Mario.

69.     Because a fiduciary relationship existed between Defendants and Aetna, Defendants were obligated to act in Aetna's best interests and in good faith relating to Aetna's rights regarding the Specifically Identifiable Funds.

70.     Defendants breached their fiduciary duties under the MAO Plan and the MSP Act by refusing to reimburse Aetna for medical expenses paid by Aetna on behalf of Guerrera.

71.     Defendants further breached their fiduciary duties by withholding information related to The Claim that required disclosure under the MAO Plan.

72.     Defendants failed to act in Aetna's best interests, and instead acted in their own best interests by refusing to protect Aetna's rights relating to the Specifically Identifiable Funds, and refusing to reimburse Aetna in accordance with the terms of the MAO Plan, in favor of avoiding their obligations by quickly settling the underlying claim and/or by keep the Specifically Identified Funds for themselves.

73.     As a result of Defendants' breach of their fiduciary duties, Aetna has been damaged in the sum of $9,854.16, plus interest and attorney's fees and costs associated with the pursuit of recovery of this amount.  Aetna will establish the precise amount of such damage according to the evidence at the time of trial.

**WHEREFORE,** Plaintiff Aetna Life Insurance Company prays for judgment against Defendants as follows:

a.    An award of double damages (i.e. twice the Specifically Identified Funds) as against Big Y under the provisions of the MSP Act and the Private Right of Action Provision;

b.    An award of damages equal to the Specifically Identified Funds plus reasonable attorney's fees and costs of this action as against Guerrera under the terms of the MAO Plan;

c.    An award of damages equal to the Specifically Identified Funds as against Carter Mario under the terms of the MAO Plan;

d.    An award of damages equal to the Specifically Identified Funds plus reasonable attorney's fees and costs of this action as against all Defendants for breach of fiduciary duty; and/or

e.    Such other and further relief as this Court may deem just and proper under the circumstances.

Dated: New York, New York
April 3, 2018

Respectfully submitted,

/s/ Brian A. Bender
Brian A. Bender, Esq.
**HARRIS BEACH PLLC**
100 Wall Street, 23rd Floor
New York, New York 10005
212-687-0100
*Counsel for Plaintiff*