### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| AETNA LIFE INSURANCE COMPANY | ) | 3:17-CV-00621 (KAD) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NELLINA GUERRERA, et al., | ) | |
| *Defendants*. | ) | August 5, 2020 |

### MEMORANDUM OF DECISION RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF NO. 75) AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 78)

Kari A. Dooley, United States District Judge

This action involves claims by the Plaintiff, Aetna Life Insurance Company ("Aetna"), that as a "Medicare Advantage Organization" ("MAO"), it is entitled to be reimbursed for payments made on behalf of Defendant Nellina Guerrera for medical care after she sustained injuries as a result of a slip and fall on the premises of a store operated by Defendant Big Y Foods, Inc. ("Big Y"). Specifically, Aetna asserts that it was entitled to reimbursement from the proceeds of a settlement of the personal injury action brought by Guerrera against Big Y and herein sues Guerrera, Big Y, and Carter Mario Injury Lawyers ("Carter Mario"), Attorney Danielle Wisniowski, and Attorney Sean Hammil all of whom represented Guerrera in the underlying personal injury litigation.[1] Pending before the Court is Aetna's motion for partial summary judgment and the Defendants' motion for summary judgment. For the reasons that follow, Aetna's motion for partial summary judgment is GRANTED. The Defendants' motion for summary judgment is DENIED in part and GRANTED in part.

---

[1] On April 3, 2018, by amended complaint, Aetna removed attorneys Wisniowski and Hammil as defendants. (*See* ECF No. 58). The Clerk of Court is directed to terminate attorneys Wisniowski and Hammil as defendants.

## Standard of Review

The standard under which courts review motions for summary judgment is well-established. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," while a dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Significantly, the inquiry being conducted by the Court when reviewing a motion for summary judgment focuses on "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250. As a result, the moving party satisfies his burden under Rule 56 "by showing . . . that there is an absence of evidence to support the nonmoving party's case" at trial. *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam) (internal quotation marks omitted). Once the movant meets his burden, the nonmoving party "must set forth specific facts demonstrating that there is a genuine issue for trial." *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) (internal quotation marks omitted). "[T]he party opposing summary judgment may not merely rest on the allegations or denials of his pleading" to establish the existence of a disputed fact. *Id.*; *accord Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). "[M]ere speculation or conjecture as to the true nature of the facts" will not suffice. *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citations omitted; internal quotation marks omitted). Nor will wholly implausible claims or bald assertions that are unsupported by evidence. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991); *Argus Inc. v. Eastman Kodak Co.*, 801

F.2d 38, 45 (2d Cir. 1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted).

In determining whether there exists a genuine dispute as to a material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)). "In deciding a motion for summary judgment, the district court's function is not to weigh the evidence or resolve issues of fact; it is confined to deciding whether a rational juror could find in favor of the non-moving party." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 254 (2d Cir. 2002).

## Allegations and Procedural History

By complaint dated April 13, 2017, Aetna alleges as follows. In February 2015, Guerrera allegedly sustained personal injuries at the Big Y store in Monroe, Connecticut for which she sought and received medical care. Aetna, as an MAO, operates a Medicare Advantage health insurance plan ("MAO Plan"), in which Guerrera was enrolled and through which she maintained health insurance. Following her accident at the Big Y, Aetna paid approximately $9,854.16 in medical expenses on behalf of Guerrera. Guerrera retained the law firm of Carter Mario and/or attorneys Wisniowski and Hammil to bring a personal injury action against Big Y, which they did. The personal injury action was settled for $30,000.00.

Beginning in September 2015, prior to the settlement, Aetna began to place the Defendants on notice that it was asserting a lien against any recovery or settlement in the case for the value of the medical expenses it covered. On March 10, 2016, Big Y allegedly agreed that it would not send

the full amount of any settlement to Guerrera or her attorneys without first addressing Aetna's claim. Notwithstanding, in September 2016, Big Y sent the full settlement amount of $30,000.00 to Guerrera and/or her lawyers. Neither Guerrera nor Big Y reimbursed Aetna for the covered expenses.

Aetna asserts, in Count One, that it is entitled to be reimbursed for the conditional payments made on behalf of Guerrera for her medical expenses. It brings this claim pursuant to the Medicare Secondary Payer Act ("MSP Act"), 42 U.S.C. § 1395y(b).

On July 5, 2017, the Defendants moved to dismiss the complaint in its entirety on the basis that, *inter alia*, the Private Cause of Action provision of the MSP Act, 42 U.S.C. § 1395y(b)(3)(A), does not give MAOs, like Aetna, the right to seek or receive reimbursement for medical expenses paid to enrollees. The Court (Hall, J.)[2] disagreed and in a thorough 38-page decision, determined that an MAO, such as Aetna, could seek reimbursement for medical expenses pursuant to the Private Cause of Action provision of the MSP Act — "[T]he court concludes that the Private Cause of Action provision unambiguously permits suit by MAOs and, further, that even if it was ambiguous the [Center for Medicare and Medicaid Services ("CMS")] regulation that addresses MAO enforcement mechanisms, section 422.108(f), grants MAOs the right to sue under the Private Cause of Action provision." *Aetna Life Ins. Co. v. Guerrera*, 300 F. Supp. 3d 367, 378 (D. Conn. 2018). In so holding, the Court examined the legislative history of the statute, the regulations issued by CMS with respect to the statute, and relevant, though relatively scant, case law which discusses these issues. Accordingly, the MSP Act claim was permitted to proceed, but only against Big Y as an alleged "primary plan" under the MSP Act. The Court retained jurisdiction over the state law claims as to the remaining defendants.

---

[2] This matter was transferred to the undersigned on September 20, 2018.

On April 3, 2018, as directed by the Court, Aetna filed an amended complaint to clarify its claims and to specify against whom the claims were alleged. The amended complaint, consisting of the same substantive allegations, includes three counts: Count One, the MSP Act claim, against Big Y; Count Two, a state law breach of contract claim, against Guerrera and Carter Mario; and Count Three, a state law breach of fiduciary duty claim, against all Defendants.

On September 17, 2018, all Defendants filed a motion for summary judgment as to all counts and Aetna filed a motion for partial summary judgment pertaining to Count One, the MSP Act claim. Those motions are decided herein.

**What the Court is Not Deciding**

As a preliminary matter, in both its motion for summary judgment and its opposition to Aetna's motion for summary judgment, Big Y asserts anew the arguments advanced in the previously decided motion to dismiss. Indeed, counsel for the Defendants conceded as much at oral argument on October 10, 2019. However, counsel for the Defendants also, though leery of putting words in Judge Hall's mouth, believed that Judge Hall had invited the Defendants to re-assert these legal arguments during a hearing held on June 8, 2018. Alternatively, the Defendants asked the Court to revisit the issues, "law of the case" notwithstanding. The Court has reviewed the transcript of the June 8, 2018 hearing before Judge Hall. There is some suggestion that these arguments could be raised at the summary judgment stage of the litigation. But the suggestion appears in the context of further fact development or in the context of Connecticut's anti-subrogation law. The Court does not read the transcript as an invitation to simply re-litigate the issues already decided. Nor is this Court inclined to revisit these issues. *See Bank of Am. v. Pastorelli-Cuseo*, 2017 WL 4678184, at *2 (D. Conn. Oct. 17, 2017) ("The [law of the case] doctrine 'applies to issues that have been decided either expressly or by necessary implication' . .

. .” (quoting *DeWeerth v. Baldinger*, 38 F.3d 1266, 1271 (2d Cir. 1994)); *Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009) (“The law of the case doctrine commands that ‘when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case’ unless ‘cogent and compelling reasons militate otherwise.’” (citation omitted)).

Here, the scope of the MSP Act and whether the Private Cause of Action provision allows MAOs to seek reimbursement from primary plans is an issue on which there is little case law. The Second Circuit has not spoken to the issue and the only Circuits that have decided the issue have both held, as Judge Hall did, that an MAO may sue to recover benefits paid under the Private Cause of Action provision of the MSP Act. *See Humana Med. Plan, Inc. v. Western Heritage Ins. Co.*, 832 F.3d 1229, 1238 (11th Cir. 2016); *In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, 685 F.3d 353, 359–60 (3d Cir. 2012). Under these circumstances, the Court sees no reason to re-examine this issue, especially in light of the thorough and well-reasoned analysis contained in Judge Hall’s decision.

Having so determined, the issues presented in these cross-motions for summary judgment are substantially narrowed. Indeed, the Defendants’ motion for summary judgment with respect to Count One, the MSP Act claim, is largely premised on arguments previously rejected by Judge Hall. Accordingly, the motion is DENIED as to Count One for the reasons set forth in her ruling.[3]

**Aetna’s Partial Motion for Summary Judgment as to the MSP Act Claim**

As previously summarized by Judge Hall:

Congress enacted the Medicare Act in 1965 as a “federally funded health insurance program for the elderly and disabled.” *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 506 (1994). The Medicare Act consists of five parts, the first two of which “create, describe, and regulate traditional fee-for-service, government-administered Medicare.” *In re Avandia Mktg.*, 685 F.3d 353, 357 (3d Cir. 2012).

---

[3] Defendants’ motion for summary judgment as to Counts Two and Three is discussed below.

The third part, Part C, outlines the Medicare Advantage Program, described further below. The fourth and fifth parts are not at issue here.

In 1980, Congress amended the Medicare Act to add the [MSP Act], in an effort to reduce the escalating costs of Medicare to the federal government. Omnibus Reconciliation Act of 1980, Pub. L. No. 90-499, 94 Stat. 2599. "As its title suggests, the statute designates Medicare as a 'secondary payer' of medical benefits, and thus precludes the program from providing such benefits when a 'primary plan' could be expected to pay.'" *Taransky v. Sec'y of HHS*, 760 F.3d 307, 310 (3d Cir. 2014). The [MSP Act] is codified at section 1395y of title 42 of the United States Code. The [MSP Act] provides that Medicare cannot pay medical expenses when "payment has been made or can reasonably be expected to be made under a workman's compensation law or plan of the United States or State or under an automobile or liability insurance policy or plan (including a self-insured plan) or no fault insurance." 42 U.S.C. § 1395y(b)(2)(A)(ii).

In subsection 1395y(b)(2)(B) of the [MSP Act], Congress gave "[t]he Secretary" authority to make conditional payments "if a primary plan . . . has not made or cannot reasonably be expected to make payment with respect to such item or service promptly," but such payment "shall be conditioned on reimbursement." *Id*. at (b)(1)(B)(i). Congress further provided an enforcement mechanism for the "United States" in cases where conditional payment has been made. Subsection 1395y(b)(2)(B)(ii) provides that "a primary plan, and an entity that receives payment from a primary plan, shall reimburse the appropriate Trust Fund for any payment made by the Secretary under this subchapter with respect to an item or service if it is demonstrated that such primary plan has or had a responsibility to make payment with respect to such item or service." 42 U.S.C. § 1395y(b)(2)(B)(ii). Subsection (2)(B)(ii) also contains a responsibility-triggering provision, which explains that responsibility for repayment "may be demonstrated by a judgment, a payment conditioned upon the recipient's compromise, waiver, or release (whether or not there is a determination or admission of liability) of payment for items or services included in a claim against the primary plan or the primary plan's insured, or by other means." *Id*. Finally, subsection (2)(B)(iii) creates a cause of action for "the United States," which provides, in relevant part:

> In order to recover payment made under this subchapter for an item or service, the United States may bring an action against any or all entities that are or were required or responsible (directly, as an insurer or self-insurer, as a third party administrator, as an employer that sponsors or contributes to a group health plan, or large group health plan, or otherwise) to make payment with respect to the same item or service (or any portion thereof) under a primary plan. The United States may, in accordance with paragraph (3)(A) collect double damages against any such entity. In addition, the United States may recover under this clause from any entity that has

> received payment from a primary plan or from the proceeds of a
> primary plan's payment to any entity.

42 U.S.C. § 1395y(b)(2)(B)(iii).

Congress also created a private right of action, codified at section 1395y(b)(3)(A)
of title 42 of the United States Code, and described herein as the "Private Cause of
Action" provision. In comparison to the cause of action created for the United
States, the Private Cause of Action provision is relatively sparse. It provides as
follows:

> There is established a private cause of action for damages (which
> shall be in an amount double the amount otherwise provided) in the
> case of a primary plan which fails to provide for primary payment
> (or appropriate reimbursement) in accordance with paragraphs
> [(b)](1) and [(b)](2)(A).

42 U.S.C. § 1395y(b)(3)(A). That is the entirety of the Private Cause of Action
provision; it does not make explicit who may bring suit or against whom, or even
under what conditions precisely suit may be brought. Paragraph (b)(1) governs
situations in which group health plans must provide payment, while paragraph
(b)(2)(A) governs situations including liability insurance settlements. 42 U.S.C.
§§ 1395y(b)(1), (b)(2)(A).

In 1997, Congress once again amended the Medicare Act to add Part C, which
"afford[s] beneficiaries the option to receive their Medicare benefits through
private organizations" known as [MAOs]. *Collins v. Wellcare Healthcare Plans,
Inc.*, 73 F. Supp. 3d 653, 659 (E.D. La. 2014). "Pursuant to these amendments, most
Medicare beneficiaries can now elect to receive their benefits through Original
Medicare or through an MAO." *Id.* at 659–60. Part C provides that [CMS] pays
MAOs a fixed amount per enrollee, and the MAOs assume the risk of insuring each
enrollee. *See* 42 U.S.C. §§ 1395w-21, 1395w-23.

Part C does not contain an enforcement provision equivalent to either the
government enforcement provision, subsection (b)(2)(B)(iii), or the Private Cause
of Action provision, paragraph (b)(3)(A). Absent an enforcement mechanism in
Part C, disputes have arisen as to whether Part C created an implied right of action,
*see, e.g. Parra v. PacifiCare of Arizona, Inc.*, 715 F.3d 1146, 1154 (9th Cir. 2013);
*Konig v. Yeshiva Imrei Chaim Viznitz of Boro Park, Inc.*, No. 12-CV-467, 2012
WL 1078633 (E.D.N.Y. Mar. 30, 2012), or—at issue in this case—whether the
Private Cause of Action is available to MAOs, *see*, *e.g.*, *Avandia*, 685 F.3d at 359–
65; *Collins*, 73 F. Supp. 3d at 666.

*Guerrera*, 300 F. Supp. 3d at 372–74. As previously discussed, Judge Hall determined that an MAO may bring an action under the Private Cause of Action provision of the MSP Act seeking reimbursement for payments which were the responsibility of a primary plan. Aetna now seeks partial summary judgment asserting that there is no genuine issue of material fact with respect to Count One in which Aetna seeks reimbursement (and double damages) from Big Y for the medical expenses Aetna paid on behalf of Guerrera.

Courts that have considered the question have held that a plaintiff seeking reimbursement under the Private Cause of Action provision of the MSP Act must establish: (1) that the defendant is, in fact, a primary plan responsible for paying a particular expense; (2) that the defendant failed to provide primary payment or, as relevant here, appropriate reimbursement to the secondary payer/plaintiff, and (3) damages. *See Western Heritage*, 832 F.3d at 1239; *Humana, Inc. v. Shrader & Associates., LLP*, 584 B.R. 658, 677 (S.D. Tex. 2018) (separating element one into two elements and leaving out damages as an element). Aetna asserts that there is no dispute that it is an MAO that offered a "Medicare Advantage Health maintenance plan" under which Guerrera maintained coverage. Aetna further asserts that there is no genuine dispute that: 1) Big Y was a "primary plan" under the MSP Act and had responsibility for payment of Guerrera's medical expenses; 2) Big Y therefore had an obligation to reimburse Aetna as the secondary payer of those expenses; 3) Big Y failed to reimburse Aetna as was its obligation and 4) Aetna is entitled to double damages.

The parties do not dispute the amount of the covered medical expenses. Nor is there any claim by Big Y that it reimbursed Aetna for those medical expenses. The dispute here is whether Big Y was a primary plan under the MSP Act. Aetna asserts that Big Y was a primary plan responsible for payment of the medical expenses which were covered by Aetna. On the contrary,

Big Y asserts that there is a factual dispute as to whether Big Y was a primary plan that had responsibility for Guerrera's medical expenses. The Court agrees with Aetna.

### Big Y is a Primary Plan that had Primary Responsibility for Guerrera's Medical Expenses

Under the MSP Act, a primary plan must reimburse the secondary payer if it is "demonstrated that such primary plan has or had a responsibility to make payment with respect to such item or service" paid by the secondary payer. 42 U.S.C. § 1395y(b)(2)(B)(ii). A primary plan is defined under the MSP Act, in part, as "a workmen's compensation law or plan, an automobile or liability insurance policy or plan (including a self-insured plan) or no fault insurance[.]" 42 U.S.C. § 1395y(b)(2)(A). Subsection 1395y(b)(2)(B)(ii) further provides that "[a] primary plan's responsibility for such payment may be demonstrated by a judgment, a payment conditioned upon the recipient's compromise, waiver, or release (whether or not there is a determination or admission of liability) of payment for items or services included in a claim against the primary plan or the primary plan's insured, or by other means." 42 U.S.C. § 1395y(b)(2)(B)(ii).

Courts have consistently held that a tortfeasor, insured or self-insured, can be a "primary plan" for purposes of the MSP Act. *See* 42 U.S.C. § 1395y(b)(2)(A) ("An entity that engages in a business . . . shall be deemed to have a self-insured plan if it carries its own risk (whether by a failure to obtain insurance, or otherwise) in whole or in part."); *Collins*, 73 F. Supp. 3d at 666 ("Congress amended the MSP in 2003 to include tortfeasors and their insurance carriers" within the definition of a primary plan.); *Brown v. Thompson*, 374 F. 3d 253, 261–62 (4th Cir. 2004) (finding that Medicare, as a secondary payer, was entitled to reimbursement from a tort settlement paid by a self-insured tortfeasor recognizing that the act provides that "a business can create a self-insured plan through its failure to obtain insurance" which evidenced Congressional intent to give the term "self-insured plan" a broad definition.).

Relevant to this issue are the following uncontroverted facts: Although Big Y had liability insurance, the coverage contemplated a $350,000.00 per occurrence retention; accordingly, Big Y was "self-insured" for the first $350,000.00 of any claims brought against it; Guerrera brought a premises liability personal injury action against Big Y in which she sought both economic and non-economic damages, to include her medical expenses; Aetna paid $9,854.16 of those medical expenses; Big Y paid Guerrera $30,000.00 as a settlement of her claims and the settlement resolved all of Guerrera's claims, to include, necessarily her claim for medical expenses; finally, Big Y conditioned the settlement payment upon the signing of a release by Guerrera. Aetna asserts that these facts, under the express terms of the MSP Act, establish Big Y's responsibility for primary payment. *See* 42 U.S.C. § 1395y(b)(2)(B)(ii).

Big Y asserts that there is a factual dispute as to its status as a primary plan, relying in part on the following facts: Big Y has always denied any liability to Guerrera and has always taken the position that it was Guerrera's own negligence that caused her fall; the settlement agreement contained an express denial of liability; in an effort to manage litigation costs and to secure finality, Big Y made a "nuisance" settlement offer to Guerrera; the offer was conditioned upon a general release containing a broad indemnity and hold harmless agreement; and the settlement did not identify the purpose for the settlement funds nor allocate the funds between the various of Guerrera's claims, i.e. economic vs. non-economic injuries. Accordingly, Big Y asserts there is a genuine issue of material fact as to whether it was responsible for Guerrera's medical expenses and whether the settlement covered those medical expenses.

Big Y first argues that the settlement payment, being conditioned on the signing of a release, is not dispositive insofar as the statute only provides that primary responsibility "**may be** demonstrated" by a settlement payment conditioned upon the signing of a release (even without

an admission of liability). *See* 42 U.S.C. § 1395y(b)(2)(B)(ii) (emphasis added). As such, Big Y asserts the payment did not, of itself, establish primary responsibility. Read in its entirety however, the statute compels a different conclusion. The statute provides that responsibility for payment "may be demonstrated" by, *inter alia*, a settlement payment conditioned upon the signing of a release, "**or by other means**." *See id*. (emphasis added). The statute thus provides a non-exclusive list by which responsibility is demonstrated and specifically contemplates that there may be other means by which responsibility for payment can be demonstrated. *See Hadden v. United States*, 661 F.3d 298, 302 (6th Cir. 2011) (noting that there are "several ways in which a primary plan's 'responsibility' can be demonstrated for purposes of [Section 1395y(b)(2)(B)(ii)]"); *see generally Horne v. Flores*, 557 U.S. 433, 454 (2009) (noting that "[u]se of the disjunctive 'or' makes it clear that each of [FED. R. CIV. P. 60(b)(5)] three grounds for relief is independently sufficient [to warrant relief from a judgment]").

That is not the end of the inquiry however, because the statute also requires that the payment and release must be "for items or services included in [the] claim against the primary plan." 42 U.S.C. § 1395y(b)(2)(B)(ii). Big Y asserts that this too is in dispute.[4] Specifically, Big Y asserts that because the settlement funds were not allocated to cover Guerrera's medical expenses, a genuine issue of material fact exists as to whether this statutory requirement is met.

The statute does not require, as a factual matter, a determination as to the purpose of the settlement payment. It requires only that the settlement involve "payment for items or services **included in a claim** against the primary plan," *Id*. (emphasis added). As indicated above,

---

[4] Aetna advances what is essentially a strict liability approach, i.e. any settlement conditioned on the signing of a release renders the tortfeasor a primary plan as a matter of law. Aetna relies upon the *Western Heritage* decision in which the Eleventh Circuit held, without any analysis, that "[w]e agree with the district court that [defendant] is a primary plan under [section] 1395y(b)(2)(A) because it is a liability insurer that, under a settlement agreement, paid [enrollee] for covered medical expenses." 832 F. 3d at 1239. The Court has no disagreement with this determination, but it is inapposite insofar as there was no dispute in that case that the settlement payment was, in fact, "for covered medical expenses." *Id*. The case does not support Aetna's strict liability approach.

Guerrera's claim against Big Y included a claim for her medical expenses and the settlement resolved all of her claims, which, of necessity, included the claim for medical expenses.

To be sure, whether a settlement (or other post-litigation) payment was for medical expenses paid by an MAO may, under different circumstances, be a fact over which a genuine dispute exists. *See*, *e.g.*, *Harvey v. Fla. Health Scis. Ctr., Inc.*, 728 F. App'x 937, 945–46 (11th Cir. 2018) (MSP Act did not require reimbursement where arbitration award explicitly stated that no award for the payment of medical expenses had been included.). But where, as here, there is no dispute that the underlying litigation that was settled did, in fact, include a claim for the payment of medical expenses, and such claim was settled with the payment of monies in exchange for a release, the plaintiff has demonstrated that the alleged tortfeasor, here Big Y, is a primary plan under the MSP Act. [5] *See Hadden*, 661 F.3d at 302 ("[T]he scope of the [primary] plan's 'responsibility' for the beneficiary's medical expenses—and thus of his own obligation to reimburse Medicare—is ultimately defined by the scope of *his own claim against the* [*tortfeasor*]. That is true even if the beneficiary later 'compromise[s]' as to the amount owed on the claim, and even if the third party never admits liability."); *Taransky*, 760 F.3d at 315 ("Like the other courts of appeals that have considered the issue, we hold that the fact of settlement alone, if it releases a tortfeasor from claims for medical expenses, is sufficient to demonstrate the beneficiary's

---

[5] Big Y relies on *Wos v. E.M.A. ex rel. Johnson*, 568 U.S. 627, 644 (2013) as analogous to this situation and as a basis upon which to reject the presumption that the settlement funds were, in any fashion, for medical expenses. In *Wos*, the Supreme Court of the United States held that the Medicaid anti-lien provision preempted states from applying a "one-size-fits-all" approach to "secure reimbursement from third-party tortfeasors for medical expenses paid on behalf of the [states'] Medicaid beneficiaries." *Id.* Specifically, North Carolina sought to establish a "conclusive presumption that one-third of the recovery represents compensation for medical expenses" in all cases. *Id.* at 635. The Supreme Court found that the presumption was incompatible with federal law, which only allows states to recover for actual medical expenses paid. *Id.* The Supreme Court held that the presumption would permit North Carolina "to take a portion of a Medicaid beneficiary's tort judgment or settlement not 'designated as payments for medical care.'" *Id.* at 644. Even if the reasoning of the *Wos* court has application under the MSP Act, a proposition that is unclear at best, it is inapposite. Here, Aetna seeks only reimbursement for actual medical expenses paid and there is no danger that it will be receiving more than that to which it is entitled under federal law.

obligation to reimburse Medicare."); *Anderson v. Burwell*, 167 F. Supp. 3d 887, 897 (E.D. Mich. 2016) ("If a Medicare beneficiary seeks medical expenses as damages in a lawsuit, and the parties settle the claim, the settlement demonstrates the tortfeasor's responsibility for those medical expenses, regardless of whether the tortfeasor admits liability.").

Accordingly, there is no genuine issue of fact as to whether Big Y is a primary plan under the MSP Act.[6] As previously discussed, neither party addresses the issue of whether appropriate reimbursement was made and there is no dispute that it was not.

**Damages**

This leaves only the issue of damages. Aetna seeks double damages under the Private Cause of Action provision. Big Y did not specifically address the issue of damages in its opposition to Aetna's motion for partial summary judgment.

As earlier addressed, the Private Cause of Action provision provides that there shall be "a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement)[.]" 42 U.S.C. § 1395y(b)(3)(A). The courts have generally recognized this provision's allowance for double damages. *See, e.g.*, *Mason v. Amer. Tobacco Co.*, 346 F.3d 36, 42–43 (2d Cir. 2003) (recognizing an individual's right to double damages from a primary plan that wrongfully refused payment); *Manning v. Utils. Mut. Ins. Co. Inc.*, 254 F. 3d 387, 391–92 (2d Cir. 2001) (same); *In re Avandia*, 685 F.3d at 359 ("[W]e find that the provision is broad and unambiguous, placing no limitations upon which private (i.e., non-governmental) actors can bring

---

[6] The Court also rejects Big Y's argument that its express denial of liability raises a question of fact as to whether Big Y had responsibility to pay Guerrera's medical expenses. First, this argument runs directly counter to the express language of the statute. *See* 42 U.S.C. § 1395y(b)(2)(B)(ii) ("responsibility . . . may be demonstrated by a … payment conditioned upon the recipient's … release (whether or not there is a determination or admission of liability)"). And to the extent that Big Y would assert that the secondary payer is required to prove the settling tortfeasor's liability to the plan enrollee when there has been an express denial of liability, support for this contention is found nowhere in the statute and Big Y has cited to no case law that requires such an unwieldy result.

suit for *double damages* when a primary plan fails to appropriately reimburse any secondary payer."(emphasis added)); *MSPA Claims 1, LLC v. Kingsway Amigo Ins. Co.*, 950 F.3d 764, 767 (11th Cir. 2020) (noting that the Private Cause of Action provision "rewards successful plaintiffs with double damages"); *Stalley v. Catholic Health Initiatives*, 509 F.3d 517, 527 (8th Cir. 2007) (noting that individuals "could recover double damages to vindicate their private rights when their primary payers fail to live up to their obligations").

Accordingly, Aetna is entitled to $19,708.32[7] as double damages for Big Y's failure to appropriately reimburse Aetna for the conditional payments of medical expenses it made on behalf of Guerrera.

For all of the foregoing reasons, judgment as to Count One will enter in favor of Aetna in the amount of $19,708.32.

**Defendant Guerrera and Carter Mario's Motion for Summary Judgment as to the Contract Claim**

In its amended complaint, Aetna alleges that Guerrera breached her contractual obligations under the MAO Plan by failing (1) to reimburse Aetna for the conditional payments it made on her behalf; (2) to satisfy Aetna's lien on the settlement proceeds; (3) to cooperate and assist Aetna in enforcing its rights to reimbursement; and (4) to preserve Aetna's rights under the MAO Plan. Further, Aetna alleges that Carter Mario breached its contractual obligations under the MAO Plan insofar as it failed to cooperate and assist Aetna in enforcing Aetna's right to reimbursement.

In the MAO Plan, (*See* ECF No. 58-2 at 105–08), Aetna provides beneficiaries, such as Guerrera, with legal notices including one regarding "Medicare Secondary Payer subrogation rights and right of recovery." (*Id.* at 106–08). Therein, Aetna explains its "rights to recover" in

---

[7] To the extent Big Y argues that Aetna's recovery must be reduced by procurement costs, Big Y is incorrect. *See Western Heritage*, 832 F.3d at 1240 ("A beneficiary's procurement costs do not offset an MAO's recovery if the MAO must litigate to secure repayment.").

situations where it makes "payments on [the beneficiary's] behalf" when it is a secondary payer.

(*Id*. at 107). Significantly, the MAO Plan includes, among others, the following provisions:

- [I]f [the beneficiary] receive[s] payment from any person, entity or insurer responsible for causing [the beneficiary's] injury, illness or condition or [the beneficiary] receive[s] payment from any person, entity or insurer listed as a primary payer above, [Aetna] has the right to recover from, and be reimbursed by [the beneficiary] for all conditional payments [Aetna] has made . . . . (*Id*.)

- [Aetna] will automatically have a lien, to the extent of the benefits it paid for the treatment of the injury, illness or condition, upon any recovery whether by settlement, judgment or otherwise. The lien may be enforced against any party who possesses funds or proceeds representing the amount of benefits paid by [Aetna] including, but not limited to, [the beneficiary], [the beneficiary's] representatives or agents, any person, entity or insurer responsible for causing [the beneficiary's] injury, illness or condition or any person, entity or insurer listed as a primary payer above. (*Id*.)

- [The beneficiary], and [the beneficiary's] legal representatives, shall fully cooperate with the plan's efforts to recover its benefits paid . . . . [The beneficiary] and [the beneficiary's] agents or representatives shall provide all information requested by [Aetna] or its representatives. [The beneficiary] shall do nothing to prejudice [Aetna's] subrogation or recovery interest or to prejudice [Aetna's] ability to enforce the terms of this provision. (*Id*. at 108).

- Failure to provide requested information or failure to assist [Aetna] in pursuit of its subrogation or recovery rights may result in [the beneficiary] being personally responsible for reimbursing the plan for benefits paid relating to the injury, illness or condition as well as for [Aetna's] reasonable attorney fees and costs incurred in obtaining reimbursement from [the beneficiary]. For more information, see 42 U.S.C. § 1395y(b)(2)(A)(ii) and the Medicare statutes. (*Id*.)

Relevant to this claim, the MAO Plan further provides: "The plan's rights to recover in these situations are based on the **terms of this health plan contract**, as well as the provisions of the federal statutes governing the Medicare Program." (*Id*. at 107 (emphasis added)).

Guerrera and Carter Mario argue that they are entitled to judgment because (1) the MAO Plan provisions relied upon are not a contract, but simply a notice regarding Aetna's interpretation

of its rights under the MSP Act, which this Court previously rejected insofar as Judge Hall ruled that the Private Cause of Action provision does not entitle Aetna to seek reimbursement from Guerrera or Carter Mario and (2) even if the MAO Plan is a contract, it is not enforceable as to Guerrera or Carter Mario because they are not parties to the contract.

In response, Aetna asserts that the MAO Plan is a valid and enforceable contract as to both Guerrera and Carter Mario because Guerrera paid premiums to Aetna and accepted Aetna's payment of her medical expenses. Aetna further argues that Judge Hall's prior ruling rejecting Aetna's attempt to seek recovery from Guerrera and Carter Mario under the Private Cause of Action provision did not speak to Aetna's state law contract claims.

The Court agrees that Carter Mario is not a party to the MAO Plan/contract and cannot be liable for breach thereof. *See FCM Grp., Inc. v. Miller*, 300 Conn. 774, 797–98 (2011) ("[A] person who is not a party to a contract (i.e., is not named in the contract and has not executed it) is not bound by its terms . . . . [A]n action for breach of contract may not be maintained against a person who is not a party to the contract." (internal quotation marks and brackets omitted)); *Bellemare v. Wachovia Mortg. Corp.*, 284 Conn. 193, 200 (2007) ("Contract obligations are imposed because of the conduct of the parties manifesting consent, and are owed only to the specific individuals named in the contract." (internal quotation marks and brackets omitted)); *see also Platt Tr. of the Virginia D'Addario Spray Trusts v. Tilcon Connecticut, Inc.*, 196 Conn. App. 564, 577, *cert. denied sub nom. Platt v. Tilcon Connecticut, Inc.*, 335 Conn. 917 (2020) ("[T]o prove the formation of an enforceable agreement, a plaintiff must establish the existence of a mutual assent, or a meeting of the minds[.]" (internal quotation marks omitted)). Aetna offers no authority to the contrary.

17

With respect to Guerrera, the Court disagrees that the plan provisions are unenforceable against her. In addition to the contract reference above, Section 1.5 of the MAO Plan is captioned "Legal information about the *Evidence of Coverage*" and states:

> It's part of our contract with you. This *Evidence of Coverage* is part of our contract with you about how our plan covers your care. Other parts of this contract include your enrollment form and any notices you receive from us about changes to your coverage or conditions that affect your coverage. These notices are sometimes called "riders" or "amendments."

(ECF No. 58-2 at 6). The MAO Plan further includes, "[t]he contract is in effect for months in which you are enrolled in our plan between January 1, 2015 – December 31, 2015." (*Id*.). Chapter 8, Section 2.3 provides that in certain circumstances, a member may end membership in the plan, to include "[i]f we violate our contract with you." (*Id*. at 100). The "*Evidence of Coverage*" is replete with the details of the rights and obligations of both Aetna and the enrollee. Simply because the plan was arranged and contracted for through the Connecticut Laborers Health Fund, does not mean that Guerrera did not have a contractual relationship with Aetna with respect to the terms of her health care coverage.[8] Nor does the Court agree that Judge Hall's decision forecloses the ability to bring a breach of contract claim against Guerrera based upon the plan provisions, as opposed to the MSP Act. Judge Hall simply did not address the issue. Ultimately, whether the "Notices" chapter of the MAO Plan creates contractual obligations, whether the obligations are co-extensive with the MSP Act or are broader, what the nature and scope of the contract obligations are generally, are issues of fact, as is the question of Guerrera's alleged breach of the contract, making summary judgment inappropriate.

---

[8] Neither Aetna nor the Defendants submitted any actual contract between the Connecticut Laborers Health Fund and Aetna so it is impossible to determine precisely what was contemplated in terms of the respective rights and obligations of the insureds and the insurer.

Defendants' motion for summary judgment on Count Two is GRANTED as to Carter Mario and DENIED as to Guerrera.

**Defendants' Motion for Summary Judgment as to the Fiduciary Duty Claim**

In its amended complaint, Aetna alleges that a fiduciary relationship existed between it and each Defendant. First, Aetna asserts that a fiduciary relationship was created between it and Guerrera when Guerrera accepted benefits from Aetna under the MAO Plan. Next, Aetna claims that Carter Mario owed Aetna a fiduciary duty while it acted as Guerrera's agent in negotiating a settlement with Big Y insofar as Carter Mario was aware of Aetna's alleged lien on the settlement. Lastly, Aetna asserts that Big Y owed Aetna a fiduciary duty not to impede Aetna's lien "as soon as Big Y became aware of that lien and/or when Big Y agreed to protect Aetna's lien" by not transferring the full settlement to Guerrera and/or Carter Mario. (ECF No. 58 at 14). As a result, Aetna alleges that Defendants were obligated to act in Aetna's best interest regarding its entitlement to a portion of the settlement and that Defendants breached their fiduciary duties by (1) refusing to reimburse Aetna for medical expenses it paid on Guerrera's behalf and (2) withholding information from Aetna regarding Guerrera's claim against Big Y.

The Defendants argue that they are entitled to judgment insofar as no fiduciary relationship existed between Aetna and any Defendant. First, Defendants argue that the nature of Guerrera's relationship with Aetna, i.e., as an enrollee/subscriber in Aetna's MAO Plan, does not impose fiduciary obligations on Guerrera. Next, Defendants argue that neither Carter Mario nor Big Y had any sort of unique relationship with Aetna to which fiduciary obligations attach. Regarding Carter Mario, Defendants note that rather than owing fiduciary obligations to Aetna, it owed fiduciary obligations to Guerrera due to their attorney-client relationship. Regarding Big Y, Defendants

argue that "there was no relationship between the parties at all, much less anything evidencing any unique degree [of] trust or confidence or unequal bargaining power." (ECF No. 76 at 36).

Aetna responds that a fiduciary relationship existed between it and each Defendant primarily because Defendants had the "superior knowledge and upper hand" insofar as they controlled the funds Aetna alleged it was entitled to. (*See* ECF No. 86 at 38). More specifically, Aetna argues that it put Defendants on notice regarding its right to reimbursement before Defendants agreed to a settlement and, therefore, Defendants had a fiduciary duty to consider and preserve Aetna's right to reimbursement. Additionally, Aetna argues that Big Y "voluntarily assumed a duty to Aetna when Big Y specifically acknowledged Aetna's claim and agreed to protect its right by issuing a separate check to cover Aetna's claim." (*Id*. at 39).[9]

Under Connecticut law, "[i]t is axiomatic that a party cannot breach a fiduciary duty to another party unless a fiduciary relationship exists between them." *Biller Assocs. v. Peterken*, 269 Conn. 716, 723 (2004). Further, the existence of a fiduciary relationship, though dependent upon the unique facts of each case, is a question of law to be determined by the Court. *See Iacurci v. Sax*, 313 Conn. 786, 795–96 (2014). In determining whether a fiduciary relationship exists, courts have "recognized that some actors are per se fiduciaries by nature of the functions they perform [including] agents, partners, lawyers, directors, trustees, executors, receivers, bailees and guardians." *Id*. at 800 (internal quotation marks and citations omitted). "Beyond these per se categories, however, a flexible approach determines the existence of a fiduciary duty, which allows the law to adapt to evolving situations wherein recognizing a fiduciary duty might be appropriate." *Id*. A fiduciary relationship "is characterized by a unique degree of trust and confidence between

---

[9] Aetna also argues that Defendants cannot argue that they do not owe it a fiduciary duty while also arguing that Aetna's recovery pursuant to its MSP Act claim must be reduced by procurement costs. Whatever the merits of Aetna's argument, the Court did not reduce Aetna's recovery by procurement costs.

the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other . . . . The superior position of the fiduciary or dominant party affords him great opportunity for abuse of the confidence reposed in him." *Id.* (internal quotation marks omitted). "The *unique* element that inheres a fiduciary duty to one party is an elevated risk that the other party could be taken advantage of—and usually unilaterally." *Id.* at 801. Though, significantly, "not all business relationships implicate the duty of a fiduciary." *Id.* at 800 (internal quotation marks omitted). Indeed, there is a "need to avoid assigning the serious, significant duties that are expected of a fiduciary to every business arrangement." *Id.* at 801.

Here, the notion that any of these defendants owed a fiduciary duty to Aetna is simply wrong. Aetna's argument boils down to a claim that simply by putting the Defendants on notice of its claims, it foisted a fiduciary's responsibility upon them. This argument finds no support in the law.

### Guerrera

Aetna, Guerrera's insurer, argues that Guerrera had a fiduciary duty to protect Aetna's interests in the settlement funds. Aetna cites no authority for this novel proposition. And to the extent a fiduciary relationship exists between an insurer and an insured, the fiduciary obligations generally flow from the insurer to the insured. *See State v. Acordia, Inc.*, 310 Conn. 1, 37 (2013) (citing *Hutchinson v. Farm Family Cas. Ins. Co.*, 273 Conn. 33, 53 (2005) (Norcott, J., dissenting) (noting "American jurisprudence . . . has long recognized that an insurer and its insured have a special relationship; that is characterized by elements of public interest, adhesion and fiduciary responsibility. These characteristics, along with unequal bargaining power, leave insureds no choice but to depend on the good faith and performance of the insurer." (internal quotation marks and citations omitted))). And even assuming Guerrera had knowledge of Aetna's entitlement to a

portion of the settlement funds, her knowledge does not upend the nature of the traditional relationship between an insurer and an insured or render Aetna no longer the party who had the "superior knowledge, skill or expertise." *Iacurci*, 313 Conn. at 800.

**Carter Mario**

Aetna next argues that Carter Mario owed it a fiduciary duty because Carter Mario, as Guerrera's attorney, knew about Aetna's claim for reimbursement while settling Guerrera's claim against Big Y. In *Biller Assocs.*, an attorney settled a case for his client, but failed to notify or pay a third-party despite knowing that the third-party had a right to 10% of the settlement funds. 269 Conn. at 720. In addition, evidence in the trial court proceedings suggested that the attorney agreed to protect the third-party's right to the funds. *Id.* at 725. However, notwithstanding this representation, the Supreme Court found that the attorney's representations were "insufficient to conclude that [the attorney] owed a fiduciary duty to [the third-party]." *Id.* The Supreme Court voiced its concern that "a rule creating a fiduciary relationship between an attorney and a third party claiming an interest in funds of the attorney's client would jeopardize a central dimension of the attorney-client relationship, namely, the attorney's undivided loyalty to his or her client." *Id.* at 726 (internal quotation marks omitted).

The Court sees no basis upon which to distinguish *Biller Assocs.* from the situation presented. Accordingly, no fiduciary relationship existed between Aetna and Carter Mario.

**Big Y**

Again, by virtue of the notice Aetna claims to have given, Aetna next argues that a fiduciary relationship existed between it and Big Y. Further, Aetna argues that Big Y owed it a fiduciary duty because Big Y agreed to protect Aetna's right to reimbursement by issuing Aetna a separate check upon settlement of Guerrera's claim. (*See* ECF No. 86-3 at 2). However, "[t]he fact that one

business person trusts another and relies on the person to perform its obligations does not rise to the level of a confidential relationship for purposes of establishing a fiduciary duty." *Hi-Ho Tower, Inc. v. Com-Tronics, Inc.*, 255 Conn. 20, 41 (2000) (internal quotation marks and brackets omitted). And as discussed above, a party's representation that it will honor a contractual agreement for the benefit of another is insufficient to create a fiduciary duty. *Biller Assocs.*, 269 Conn. at 725. Other than Big Y's awareness of Aetna's claim and Big Y's agreement to issue Aetna a separate check upon settlement of Guerrera's claim, Aetna points to no evidence suggesting any unique degree of trust or confidence between Big Y and Aetna that might establish a fiduciary relationship. *See Iacurci*, 313 Conn. at 802 (Courts should not "unduly extend[] the scope of fiduciary obligations to all ordinary business relationships.").

Because no fiduciary relationship existed between Aetna and any Defendant, the Defendants motion for summary judgment is GRANTED as to Count Three.

**Conclusion**

Defendants' motion for summary judgment is DENIED in part and GRANTED in part. Plaintiff's motion for partial summary judgment is GRANTED. The Clerk of Court is directed to enter judgment as to Count One in favor of Plaintiff in the amount of $19,708.32. The Clerk of Court is also directed to enter judgment as to Count Two in favor of Defendant Carter Mario and as to Count Three in favor of all Defendants. Remaining is Aetna's breach of contract claim against Guerrera.

**SO ORDERED** at Bridgeport, Connecticut, this 5th day of August 2020.

  _/s/ Kari A. Dooley_____
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE